THOMAS WALSH, Appellant, *v.* ST. LOUIS EXPOSITION AND MUSIC HALL ASSOCIATION, Respondent.

February 24, 1885.

CONTRACT — INTERPRETATION — ARCHITECTS. — Under a written proposition made to certain architects for plans and specifications of a certain proposed building, under the terms of which proposition each architect should receive the sum of five hundred dollars for his plans, irrespective of relative merit, and which contained the further clause that: "The architect who is successful shall not receive five hundred dollars, but he shall be engaged as architect and superintendent, and shall be paid," etc.,

the architect whose plans are accepted as the most meritorious of all, has a right of action for a refusal to employ him as architect and superintendent.

APPEAL from the St. Louis Circuit Court, ADAMS, J.

*Reversed and remanded.*

KLEIN & FISSE, for the appellant.

MCKEIGHAN & JONES, for the respondent.

LEWIS, P. J. delivered the opinion of the court.

The petition sets forth that the plaintiff is an architect and superintendent, and has pursued his profession in the city of St. Louis for a great many years. That, in April, 1883, the defendant, having in contemplation the erection of a building for exposition and music hall purposes, solicited and invited the plaintiff to prepare designs.and plans, etc., in a written proposal as follows :

"ST. LOUIS, April 19, 1883.
"*Mr. Thomas Walsh* —

"DEAR SIR: At a meeting of the board of directors of the St. Louis Exposition and Music Hall Association, held on the 18th day of April, 1883, the following resolutions were adopted : —

"*First.* That all architects, residents of this city, and five non-residents, be invited to prepare and submit designs.

"*Second.* That from those presented by residents, seven which shall be considered the most meritorious, shall be accepted and awarded five hundred dollars ($500) each, and the five presented by non-residents, shall each be awarded the same amount. All designs for which you pay five hundred dollars ($500) shall be the property of the association.

"*Third.* That it should be understood, that any foreign architect may submit a design, but if not accepted as the most meritorious of all, he will receive no compensation, and his design shall be returned

" *Fourth*. The architect who is successful shall not receive five hundred dollars, but he shall be engaged as architect and superintendent, and shall be paid, for performing such duties, the usual commissions as adopted by the American Institute and the St. Louis Institute of Architects.

" *Fifth*. That all architects entering for competition shall so notify the president or secretary on or before May 5, 1883.

" *Sixth*. That said plans or specifications shall be placed under seal in hands of the secretary on or before July 2, 1883, and that they shall be without names or marks to indicate by whom made.

" *Seventh*. That there shall be ground plans of the severa floors, drawn to a scale of one-sixteenth of an inch to the foot, and elevations and cross and longitudinal sections, drawn to a scale of one-eighth of an inch to the foot, with descriptive specifications. Elevations to be geometrical and in line supply. No perspective drawings will be admitted. All plans must be simply tinted in India ink. No shaded drawings will be admitted.

" *Eighth*. The said designs and specifications shall be for a building to cost not over four hundred thousand dollars ($400,000), exclusive of power, electricity, and elevator machinery, arrangements for which, however, must be made.

" *Ninth*. As to the building itself, and what architects should be requested to include in their plans, we recommend the following features : —

" *First*. That building shall not cover more than 480x320 feet.

" *Second*. A music hall, with seats 20x30 inches, to seat four thousand people, and arranged so that it can be used for balls, exhibits or dramatic purposes. That the stage shall be large enough to accommodate an organ and seat one thousand persons. The hall to be well lighted, ventilated, and with perfect acoustics.

" *Third.* A small hall to seat one thousand two hundred persons, with suitable stage.

" *Fourth.* A basement under building, to be arranged for machinery, carriages, and other heavy exhibits, and for power shafting.

" *Fifth.* Fine art rooms, for display of pictures and statuary.

" *Sixth.* Floral hall that will provide for rockery and water displays.

" *Seventh.* General exhibit hall for all articles.

" *Eighth.* Dressing-rooms, closets, etc., for public use.

" *Ninth.* Boiler rooms, coal sheds, etc., away from building.

" *Tenth.* Arrangements for elevators to high parts of building.

" We trust that you will give the above your immediate attention, and notify the secretary at once of your intention to furnish plans.

" Yours respectfully,

" HENRY V. LUCAS,<br>" *Secretary.*

" N. B. — You can see survey of ground at my office, 322 Pine Street."

The petition further avers that the plaintiff duly notified the defendant of his intention to act upon the said proposal, and that he thereupon prepared and submitted two designs in full accordance with the terms thereof. That " the designs, plans, elevations, sections, and specifications prepared and handed in by him to said defendant were, upon examination and consideration by the defendant and its board of directors, considered and declared as the most meritorious of all those that had been submitted to it under said proposal, and that the same were accepted by said defendant as such, and thereby the plaintiff became and was the successful architect within the purview and meaning of

said proposal ; and the plaintiff says that the defendant after so accepting his designs, plans, elevations, sections, and specifications, retained the same and still retains the same, and is now using the same, in part, in the erection of the building," etc.  The petition avers the plaintiff's tender and offer to the defendant to assume and perform the work of architect and superintendent, and his present readiness and willingness to assume, perform, and discharge the same.  "And the plaintiff says that the defendant, wholly unmindful of and in disregard of its just and legal obligations and duty in the premises toward the plaintiff, has refused and still does refuse to engage the plaintiff as architect and superintendent as aforesaid, to the damage of the plaintiff in the sum of twenty thousand dollars."  The circuit court sustained a demurrer to this petition, on the ground that it did not state facts sufficient to constitute a cause of action.

No question is raised as to the sufficiency of the proposal made by the defendant and its acceptance by the plaintiff, to constitute a binding contract of some sort, for the breach whereof by one party a right of action might accrue to the other.  But the defendant objects that nothing in its proposal implies an obligation, in any event, to employ as architect and superintendent the person whose design should be found the most meritorious or acceptable of all that might be submitted ; and therefore no right of action is shown in the plaintiff, for the defendant's refusal so to employ him.  The plaintiff contends that such an obligation appears in the fourth clause of the proposal, which we here repeat for convenient reference : —

" *Fourth.* The architect who is successful shall not receive five hundred dollars, but he shall be engaged as architect and superintendent, and shall be paid, for performing such duties, the usual commissions as adopted by the American Institute and the St. Louis Institute of Architects."

Who is the person intended by the expresssion "the architect who is successful," and to whom the promise is made, that he shall be engaged as architect and superintendent upon the terms specified? The defendant answers, that the expression means, not "the architect presenting the best plans, but the one who should be in fact employed by the defendant." In other words, the defendant means only to promise that the one who shall be in fact employed as architect and superintendent, shall "be engaged as architect and superintendent." The unreasonableness of this interpretation is not limited by its imputation of tautology and surplusage. The whole tenor of the proposal demonstrates that no such application of the words was thought of in its framing.

An invitation is extended to a large number of architects to devote their thought, labor, and skill to the production of designs, from which one is to be selected for a costly exposition building. These designs are to comprehend many details and complications, demanding, perhaps, several months of application and the highest order of constructive talent. The leading idea pervading the whole invitation, and specially indicated in the fifth clause, is that of competition, in which some one is expected to be successful. Competition in what? Not in efforts to obtain the superintendency; for, aside from other considerations, the defendant says it proposed no competition for that object, and no such reward in any event, but was to be left absolutely free in its selection of a suitable person for the position. The competition, then, was to be in efforts by the competitors, respectively, to produce the most acceptable design. Who will be "successful" in this competition? Clearly, the architect who achieves its object. If, therefore, the plaintiff, as he avers, did prepare and hand in "designs, plans, elevations, sections, and specifications," which were, "upon examination and consideration by the defendant and its board of directors, considered and

declared as the most meritorious of all those that had been submitted to it under said proposal, and the same were accepted by said defendant as such," he thus became and was the successful architect, to whom the fourth clause of the proposal distinctly promises the superintendency.

It is not to be conceived that either party, in the making of the contract, contemplated any such effect as is now claimed for the defendant. Referring to the second clause in the proposal, it appears that five invited non-resident architects were to receive, each, $500 for their designs, absolutely, without regard to their comparative merits. If no further inducement was to be understood, why should these concern themselves about any approach to excellence in their several designs? They had only to send in plans conforming clerically to the stipulations, and to feel assured of the same reward, even if the productions were gotten up with little labor, and were comparatively worthless. The same may be said as to the seven resident architects, supposing (which is quite possible) that only seven residents should contribute designs. Their seven designs would, of course, be the most meritorious of the home productions, whatever might be their real want of value. A far more rational understanding may be found in what is conveyed by the plain words of the proposal. An offer of the superintendency is held out to the architect who shall surpass all others in the excellence of his design, whether he be a resident, or an invited or uninvited non-resident. That this common stimulus is intended for all, is obvious from the reading of the first, second, and third clauses. The five invited non-residents are to be paid $500 each, whether successful or not. Nothing is said, here or elsewhere, about paying that sum to the uninvited non-resident in any case. Yet it is implied in the third clause that, if his designs shall be " accepted as the most meritorious of all," he is to receive a compensation. What compensation? Naturally he will become the " architect who is successful," and will have earned the

superintendency under the fourth clause.   This will be his compensation — still without the $500, as would be the case with any other competitor who might be successful.   The term "compensation," is by no means limited to a payment in money; especially where another form of compensation appears as a subject of treatment also, in the same transaction.   This makes the proposal and the contract consistent throughout.   Twelve selected architects are to be paid $500 each for their trouble in preparing designs, even though no one of them shall produce the best.   Any one of all, whether of the twelve or not, who shall produce the best and most acceptable design, will be rewarded with the superintendency, but " shall not receive $500."

Argument is offered to show that the defendant could not have intended to bind itself to an appointment of the successful competitor as superintendent of the work, because that might necessitate the appointment of one personally unfit to be intrusted with such a position.   In the absence of any reservation on that point in the proposal, it might be difficult to determine what character or extent of personal unfitness would justify the defendant in refusing to perform its promise.   But, in any view of that question, it would be wholly a matter of affirmative defence, which the plaintiff could never be called upon to negative by anticipation, and which is entitled to no consideration upon a demurrer to the petition.   Even if there had been a reservation in the proposal, of a right in the defendant to reject for personal unfitness, it might become a question whether the letter addressed to the plaintiff by the defendant, in this case, specially inviting him to compete for the prize held in view, would not amount to a direct admission of his fitness to earn and receive it, and a waiver of the reservation, so far as it might affect him.

Not finding the petition open to the objections offered against it, we reverse the judgment and remand the cause, with the concurrence of all the judges.