# Raymond M. Hood, Appellant, v. Polish National Alliance of the United States of North America, Appellee.

## Gen. No. 31,534.

1. BUILDING AND CONSTRUCTION CONTRACTS—*payment on offer to architect as ratification.* Payment by a fraternal society to an architect of the first instalment of a prize award won by him, in a contest to select an architect for planning and directing construction of a society building, without first securing the consent of the society convention, was proof the society did not consider its whole prize offer to require the convention's consent before it should be binding.

• 2. ESTOPPEL—*what representations estop from pleading failure to ratify contract.* A fraternal society is estopped from pleading failure of its authorities to ratify its prize offer to architects to select one to control the construction of a building for it, by the fact that its authorized agent representing to the architect, who later won the award, that such award would be binding without the consent of the society convention, though this was intimated in the offer to be necessary.

3. CONTRACTS—*oral evidence as varying offer of a contract.* Oral evidence may be introduced to show what a prize offer really was inasmuch as it did not become a contract until its acceptance by the winner and ratification thereof by the offerer.

4. BUILDING AND CONSTRUCTION CONTRACTS—*what sufficient acceptance by architect of contract to supervise.* A fraternal society's prize offer to architects to select one for planning a building is unilateral until an architect accepts it in the light of the interpretation given by the society's agent and the society shows its agreement to this acceptance by making partial payment of the prize award for his work already furnished.

5. AGENCY—*what constitutes holding out as agent and ratification of his acts.* A fraternal society in conducting a prize contest for an architect for its building, makes a party's acts and words as agent binding upon it by calling him its professional adviser in the contest, making no objection to his advising a prospective competitor on the meaning of the offer, and by agreeing to the successful competitor's interpretation of the offer as stated to him by the adviser by making him partial payment of the award for work already done.

6. BUILDING AND CONSTRUCTION CONTRACTS—*mutuality of contract of employment of architect pursuant to prize contest.* An award under a prize contest to select an architect for a building is a mutual contract if the architect is not merely given a prize for a plan but is to

supervise the building and may be compelled to do so after his acceptance of the award.

7. CONTRACTS—*binding effect of requirement for ratification by offerer's governing board.* A defendant is not liable under a contract which makes ratification thereof by its governing board an absolutely binding requirement, if such ratification is not secured, even though the refusal is arbitrary.

Appeal by plaintiff from the Superior Court of Cook county; the Hon. JOSEPH B. DAVID, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1926. Reversed and remanded with directions. Opinion filed October 19, 1927. Rehearing denied November 4, 1927.

KIRKLAND, PATTERSON & FLEMING, for appellant; JOSEPH B. FLEMING, LOUIS G. CALDWELL and JOSEPH H. PLECK, of counsel.

LEO S. MALLEK and EWART HARRIS, for appellee.

MR. PRESIDING JUSTICE TAYLOR delivered the opinion of the court.

On July 28, 1925, Raymond M. Hood, the plaintiff, claiming that he had been employed by the Polish National Alliance of the United States of North America, the defendant, as an architect to design and supervise the construction of a proposed building, for which he was to receive six per cent on approximately $800,000, and that the defendant had broken its contract with him, brought suit in the superior court for damages.

The issue, as it was finally made up and tried, arose as the result of an amended declaration and a general demurrer. The trial judge sustained the demurrer, and entered a judgment of *nil capiat* against the plaintiff. This appeal is from that judgment.

The only question here is whether the declaration states a cause of action. It is an elaborate document covering 20 or 30 pages of the record. One of the

reasons for its seeming prolixity is that it contains, in full, a 10-page printed invitation and offer to architects to compete for the job of designing and supervising the construction of a proposed building.

The declaration alleges, first, the following: That the plaintiff is an architect; that the defendant is a fraternal beneficiary society, incorporated in Illinois; that it has power to own real estate and to build buildings necessary for its general purposes; that in the year 1923, it desired to build for its own use on a site which it owned in Chicago; that at a meeting of the Convention of the Alliance—the highest legislative body of the defendant—in 1923, a resolution was passed by a two-thirds majority of the convention authorizing and giving its president and board of directors unqualified power and authority to select by architectural competition an architect to design and supervise the construction and actual erection of the proposed building at a cost of not to exceed $800,000; that pursuant to that resolution and in accord with its terms, the defendant, through its president and board of directors, prepared a program of an architectural competition, in printed form, which contained a general invitation to architects to compete, and contained, also, the terms of the competition.

The declaration alleges, secondly, the contents of the program or offer. That document is entitled, "Architectural Competition for a new building for The Polish National Alliance, Chicago, Illinois, K. Zychlinski, President; John F. Singer, Chairman Building Committee. Professional Adviser R. C. Llewellyn, A. I. A., 38 So. Dearborn St. * * * Program for an Architectural Competition for a new office and headquarters building for the Polish National Alliance * * *." Though called a "Program," we shall entitle it hereafter, what chiefly it is in the eyes of the law, an "offer."

The preamble sets forth that the defendant, desiring to build an office and headquarters building on a site which it has secured, "invites architects to submit drawings in competition showing a design for a building in accordance with the following program, the purpose of the competition being the selection of an architect to design and supervise the actual erection of the proposed building."

Following the preamble, the document contains four major divisions, entitled, respectively, Program Part I to IV, both inclusive. These include in all, 20 different subjects, the text of which for convenience, we shall call sections.

Section 2, and entitled, "Authority," is as follows:

"The President and Board of Directors of the Polish National Alliance have authority to select an Architect to prepare the plans for and supervise the erection of the building, and will hereinafter be referred to as the Owner. The action of the President and Board of Directors will be subject to ratification by the Supreme Convention of the Alliance which will be held the last week in August, 1924."

Section 3, entitled "Architectural Adviser," is as follows:

"The Owner (the defendant) has appointed as its Professional Adviser, R. C. Llewellyn, A. I. A. * * * Chicago, to prepare this program and to act as its adviser in the conduct of this competition."

Section 4 limits competition to those who apply to Llewellyn, its professional adviser, on or before June 10, 1924, and who give evidence satisfactory to him of their ability to do the work.

Section 5 provides for a jury of award of three architects and two members of the defendant.

Section 6 provides that the jury of award "will have authority to make the award and that its decision in the matter shall be final." It also contains the following:

"The Owner further agrees to employ as architect for the work as more fully set forth hereinafter, the author of the design selected by the Jury as its first choice."

Sections 7 and 8 pertain to the examination of the designs, the award and the report of the jury.

Section 9 provides for compensation for successful competitors as follows:

"The Owner agrees to pay to the successful competitor within ten days of the judgment, the sum of $1,000.00, as a partial payment on his fee for services as architect, as specified hereinafter." It also provides for those who are ranked second and third, prizes of $750 and $500, respectively.

Sections 10 and 11 pertain to the exhibition of the drawings, and the use of unsuccessful designs.

Section 12, entitled "Communications" (Mandatory), is as follows:

"If any competitor desires information of any kind whatever in regard to the competition, or the program, he shall ask for this information by anonymous letter addressed to the Professional Adviser, and in no other way, * * * but no request received after July 15, 1924, will be answered."

Section 14 provides that drawings shall be delivered to Llewellyn, the Professional Adviser not later than August 12, 1924.

The second subdivision, "Program Part II," pertains to the site, the cost, which is put at a maximum of $800,000, the cubage and drawings.

The third subdivision, "Program Part III," is entitled, "Agreement Between Owner and Competitors." It contains, in section 19, the following:

"In consideration of the submission of drawings in this competition, and the mutual promises enumerated in the subjoined 'Conditions of the Contract between Architect and Owner,' the Owner agrees, and each competitor agrees if the award be made in his

142    APPELLATE COURTS OF ILLINOIS.

Hood v. Polish Nat. Alliance of United States, 246 Ill. App. 137.

favor, to enter into a contract containing all the 'Conditions' here following, and until such contract is executed, to be bound by the said 'Conditions.'" It also provides that in case of delay in proceeding with the construction, "payments to the Architect will be due only in proportion to and when his services are rendered."

Section 20 is entitled, "Conditions of Contract between Architect and Owner." It provides that

"The Architect is to supervise the execution of all the work committed to his control." "The Owner is to pay the Architect for his complete services a sum equal to six per cent of the complete cost of the work, payments to be made as follows:

"Upon completion and approval of preliminary studies, one-fifth of the total estimated fee less the $1,000.00 previously paid; upon completion of working drawings and specifications, two-fifths more; and for detail drawings, supervision, and administration, the remainder of the fee from time to time in proportion as certificates are issued, * * *. If for any reason the work is at any time abandoned, the Architect shall be fully paid for services rendered in accord with the Schedule of Charges of the American Institute of Architects."

The final subdivision entitled, "Program Part IV," pertains to the detailed requirements of the building.

The declaration alleges, thirdly, certain conduct of both the plaintiff and the defendant, which, it is charged, took place after the offer was put forth. Those allegations are substantially as follows: That pursuant to the resolution passed by the convention of 1923, the defendant appointed Llewellyn, an architect, to draw up the printed offer, and to act as its adviser in the conduct of the competition; that it became his duty to consult with applicants wishing to take part, to receive and examine their applications, and to select those who were to be allowed to take part; that the

defendant widely advertised the competition and announced through the press that architects desiring to compete should apply to Llewellyn for copies of the printed offer; that the plaintiff, accordingly, on May 19, 1924, applied to him and received a copy of the printed offer; that upon examination of it, as sections 6 and 7 of the offer provided that the decision of the jury of award was to be final and was to close the contract, set forth in sections 19 and 20, between the defendant and the author of the design selected by the jury as its final choice, and as section 2 provides that the action of the defendant's president and board of directors was to be subject to ratification by the Supreme Convention of the Alliance, in August, 1924, "the plaintiff was unable to determine the nature of the defendant's liability thereunder"; that he, the plaintiff, thereupon, before making application to enter the competition, it being the plaintiff's intention not to become a competitor if the defendant was not irrevocably bound to employ the winner, of the first prize, to design and supervise the construction of the proposed building, went to Llewellyn and asked him to explain the meaning of section 2, and the nature of defendant's liability thereunder; that the plaintiff told Llewellyn that he would not enter the competition if the defendant was not bound to pay $1,000 to the successful architect as a partial payment, as provided in section 9, and to employ him to design and supervise the construction of the building; that Llewellyn, acting within his authority, expressly told him, the plaintiff, that under the terms of the "Program" the award of the jury was to be final, was not subject to refusal or ratification, that the defendant would be irrevocably bound to pay the winner of the first prize $1,000 within 10 days of the award, and to employ him to design and supervise the actual construction of the building as soon as the jury made its award, that the provision in section 2 of the "Pro-

gram'' with reference to ratification was not intended
to, and did not, in view of the provisions of sections
4, 6, 7, 9, 19 and 20, make the liability of the defend-
ant in any way dependent upon ratification by the
Supreme Convention; that Llewellyn further advised
the plaintiff that ratification by the Supreme Conven-
tion was a merely formal matter, and ratified acts of
various bodies of the Alliance as a matter of course
and in contemplation of such general practice the sec-
ond sentence in section 2 was inserted without any
intention to eliminate the liability of the defendant,
which liability Llewellyn said bound the defendant to
pay $1,000 to the winner of the competition, and auto-
matically bound the defendant, upon the award of the
jury, to enter into the contract set forth in Part III
of the ''Program''; that Llewellyn by saying what he
did caused the plaintiff to believe that the defendant's
liability was as he, Llewellyn, represented it to be.

It was further alleged that on June 10, 1924, the
plaintiff, relying upon sections 4, 6, 7, 9, 19 and 20,
and relying upon what Llewellyn had said, as men-
tioned above, in explaining the ''Program,'' made a
written application to enter the competition; that on
June 14, 1924, as provided in section 4, he was noti-
fied by Llewellyn that he was admitted to engage in
the competition; that he, the plaintiff, then prepared
his design, and on August 12, 1924, in reliance upon
sections 4, 6, 7, 9, 19 and 20, and upon what Llewellyn
said, as above mentioned, submitted his design, which
was accepted by Llewellyn, and, together with those
of other architects, submitted to the jury of award
composed of the president of the defendant, the chair-
man of the defendant's building committee, and three
eminent architects, which met on August 18, 1924, and
on several other occasions, and on August 20, 1924,
selected the plaintiff's design as its first choice and
awarded him the first prize; that the defendant thereby
automatically closed the contract between it and the

plaintiff and then became bound to pay to the plaintiff $1,000 as partial payment for his services and to employ him to design and supervise the actual construction of the proposed building.

It is further alleged that on November 21, 1924, the defendant paid $1,000 to the plaintiff as partial payment for his services, and wrote to him on that date, "Enclosed please find check for $1,000.00 as winner of first prize in the Architectural Competition held by the Polish National Alliance"; that by virtue of the action of the jury of award, on August 20, 1924, of the promises of Part III of the "Program," and in consideration of the submission of plaintiff's design and the awarding to him the first prize, the defendant entered into a contract with him, containing the conditions enumerated in section 20, under the terms of which the defendant agreed and became bound to employ him to design the proposed building and supervise its construction, and to pay him for his services, as provided in section 20, an amount equal to six per cent of the complete cost of the proposed building; that by virtue of the action of the jury of award, and in consideration of the submission of plaintiff's design in the competition, and the awarding to him of the first prize, the defendant agreed, and became bound to pay to the plaintiff $1,000 within ten days after the award as a partial payment to the plaintiff as his fee as architect for the proposed building, which amount it paid.

It is further alleged that on August 20, 1924, the plaintiff was, and has been ever since, ready, able and willing to perform the contract on his part, yet, the Supreme Convention of the Alliance which met in the month of August, 1924, arbitrarily and without cause, failed to ratify any action of the defendant in connection with the competition, and failed to ratify the award of the jury; and the defendant, though often requested to do so, has wrongfully failed and refused

146    APPELLATE COURTS OF ILLINOIS.

Hood v. Polish Nat. Alliance of United States, 246 Ill. App. 137.

to perform its part of the contract in any manner, except that it paid to the plaintiff the $1,000 as provided in section 9; that the defendant has wrongfully failed and refused to employ the plaintiff to design, and supervise the construction of the proposed building, and has otherwise wholly disregarded the award of the jury and the terms and conditions of the competition, causing him damages to the extent of $75,000.

The amended declaration contains in addition to what has already been set forth, ten other counts.

Count 2 alleges that the Supreme Convention failed to ratify the action of the defendant or the award of the jury "for reasons entirely and wholly independent of the terms and conditions of the competition, and having no connection whatever with the merit of the plaintiff's design" or his ability to perform.

Count 3 alleges that under the terms of the contract ratification was not a condition precedent.

Count 4 alleges that the contract properly construed provides that ratification was not a condition precedent to defendant's liability, and contains no allegation concerning explanations made by Llewellyn.

Counts 5 and 6 differ from count 4, only in regard to the allegations concerning the refusal of the convention to ratify the selection of the plaintiff as architect. Count 5 alleges that the refusal to ratify was for reasons independent of the terms of the competition, and count 6 is drawn on the theory that no ratification was necessary.

Counts 7 and 8 contain no allegations concerning representations made by Llewellyn, and none concerning payments made under section 9. They differ only in their allegations concerning the reasons alleged for the refusal of the Supreme Convention to ratify the award, count 7 alleging refusal to ratify being without cause and arbitrary, and count 8 alleging refusal for reasons wholly independent of the competition and

having no connection with the merit of plaintiff's design or his ability to perform.

Counts 9, 10 and 11 are like counts 1, 2 and 3, respectively, save that in the former in describing the authority given the defendant by the convention in 1923, the word "unqualified" is eliminated.

In our judgment there is no doubt but that the written offer was ambiguous. In the view we take of the case, however, it is not necessary to go into the question whether the ambiguity is latent or patent. Certainly it was a very inartistic document.

For the defendant to state at the outset in its offer that the "purpose" of the competition was "the selection of an architect to design and supervise the actual erection of the proposed building"; to state in section 2 that it has "authority to select an architect to prepare the plans for and supervise the erection of the building"; to state in the same section that the action of the defendant "will be subject to ratification by the Supreme Convention"; to state in section 6 that it "agrees to employ as architect for the work   *   *   * the author of the design selected by the jury as its first choice"; to state in section 7 that "The opening of the envelope containing the name of the author of the selected design will automatically close the contract between him (the plaintiff) and the owner"; to state in section 9 that the defendant "agrees to pay to the successful competitor within ten days of the judgment, the sum of $1,000 as a partial payment on his fee for services as an architect"; to state in section 19, "In consideration of the submission of drawings in this competition, and the mutual promises enumerated in the subjoined 'Conditions of the Contract between Architect and Owner,' the Owner (defendant) agrees, and each Competitor agrees if the award be made in his favor, to enter into a contract containing all the 'Conditions' here following, and until such contract is executed, to be bound by the

said 'Conditions'''; to state in section 20, ''The Owner (the defendant) is to pay the Architect for his complete services a sum equal to 6 per cent of the complete cost of the work, payments to be made as follows: Upon completion and approval of preliminary studies, one-fifth of the total estimated fee less the $1,000.00 previously paid * * *,'' is either to offer unqualifiedly to make a contract with him, that is, without ratification, or to offer to make a contract with him provided a third party, the National Convention, ratified what the defendant did, or to play fast and loose with the plaintiff, and pretend to offer something which it may be bound by, or repudiate as it sees fit. That the offer had some binding effect, and to some extent, at least, ratification was not a condition precedent, the defendant may be said to have admitted by actual paying to the plaintiff $1,000 as a ''partial'' payment for his services rendered and to be rendered. Certainly, if, as claimed for the defendant, the second part of clause 2 ''was fair warning to all concerned that the authority of'' the defendant ''was limited and their action subject to ratification by the Supreme Convention,'' the defendant did not owe the plaintiff, there being no ratification, the $1,000 which was provided for in section 9, and which it paid either as a partial payment or otherwise. Having made that payment and to that extent having recognized and confirmed the offer as binding, without ratification, it does not seem reasonable to argue that it might thereafter claim that its whole offer was subject to ratification, and that Llewellyn did not have authority to say what he did. Proof that the defendant paid $1,000 as a partial payment certainly would be proof it did not consider that part of its offer was subject to ratification.

It is claimed by the defendant that the offer is the same as though, at the end of each of the sections 6, 7, 9, 19 and 20, there were the words, ''subject to

Hood v. Polish Nat. Alliance of United States, 246 Ill. App. 137.

ratification by the Supreme Convention." Even if that were admitted, we are of the opinion, however, that the allegations that the defendant through Llewellyn, its agent, waived any such meaning, and by inducing the plaintiff to rely upon the offer as one which would bind the defendant without ratification, it is not now entitled to the defense of a failure of ratification.

Three parties were involved in the offer, the defendant, which desired to put up a building, and so made a general offer to architects, the plaintiff, who competed and was successful and did certain work and was given a "partial" payment, and the Supreme Convention in section 2. It is alleged by the plaintiff that he applied orally to Llewellyn—who from the very terms of the offer and what was done by the defendant, must be considered as the authoritative agent of the defendant—and was told that ratification by the Supreme Convention mentioned was merely a formal matter, and that, relying upon the offer and what was said, he, the plaintiff, went to work, and took part in the competition and was successful, and was paid in part.

But it is claimed for the defendant that, although those facts are alleged, proof of what was oral, owing to the offer being in writing, is incompetent. With that we do not agree. We think the plaintiff would be entitled to introduce evidence to show all that may have been said by Llewellyn on the subject of ratification, either to show what was to be understood to be the meaning of the particular words in section 2 in their relation to the whole offer, and, also, to show any and all acts of the defendant, such as the partial payment of $1,000, that might in any way bear on their mutual interpretation of what constituted the offer, what the understanding was, and what, if anything, their minds met on. The offer, when put forth, was not a contract. It was unilateral until some one else acted by way of a counter proposition or acceptance.

It was in and by itself entirely inocuous and without legal effect. The plaintiff might accept it as it was written or otherwise. He did accept it in and by itself with the understanding given him by Llewellyn, and the defendant, by its conduct, ratified his acceptance by making a partial payment for services rendered. *Walsh v. St. Louis Exposition & Music Hall Ass'n,* 16 Mo. App. 502, aff'd 90 Mo. 459. This is not a suit against the Supreme Convention. It is not a party. The defendant may have made itself liable, even though against the will of the National Convention. The defendant by its conduct may have estopped itself, mauger the actual verbiage of the written offer itself. If the defendant, by Llewellyn's authorized conduct in professing to interpret section 2, led the plaintiff to do a lot of work, and rely upon ratification as a merely formal act, then it is bound, notwithstanding what the offer stated about ratification by the Supreme Convention. The latter, as we have stated, is in no way involved in such a controversy. There is no claim that the defendant could not bind itself. If the building had been erected and the plaintiff had acted as architect and had supervised its construction, the defendant could not, on the ground that the Supreme Convention refused ratification, escape liability. Having received and accepted the work it would be bound.

It is claimed for the defendant that by the text of the offer Llewellyn did not have sufficient authority to bind the defendant by anything he said. But the language used in section 3, which gave him authority "to prepare this program (the offer) and to act as its (the defendant's) adviser in the conduct of this competition," and that of other sections, such as sections 7, 8, 11, 12, 13 and 14, all go to show that Llewellyn was authorized to "give information of any kind whatever in regard to the competition, or the program." It is true that it was provided in sec-

tion 12 that information should be obtained only by anonymous letters addressed to Llewellyn; still, if Llewellyn, the professional adviser, saw fit to give, upon oral or written application of the plaintiff, information such as an interpretation of section 2 to the effect that ratification was merely a formal matter, and the plaintiff relied upon it, and later the jury made its award and the defendant sanctioned it, and the plaintiff was designated the successful competitor and was given a partial payment of $1,000, and meanwhile no objection was made by the defendant to the conduct of Llewellyn and the plaintiff, that they had acted in contravention of section 12, it, the defendant, must be considered as bound by the acts of its agent; manifestly as a matter of common sense it would be grossly unreasonable to hold otherwise. There is no implication of fraud or imposition; it was a practical situation, as alleged by the plaintiff, and, if proven as alleged, the defendant would be estopped, and considered legally bound by the conduct of its agent. *Snead & Co. Iron Works v. Merchants Loan & Trust Co.*, 225 Ill. 442. In the latter case, the court approves the following language from *Wells v. Carpenter*, 65 Ill. 447:

"The true principle of sound ethics is to give the contract the sense in which the person making the promise believed the other party to have accepted it, if he, in fact, did so understand and accept it." *Street v. Chicago Wharfing & Storage Co.*, 157 Ill. 605.

It is urged for the defendant that the contract as alleged is void for mutuality. In our judgment, there is no doubt that the defendant would have the right to compel the plaintiff to perform, or failing to perform, to recover damages. For the defendant, the case of *Tilley v. City of Chicago*, 103 U. S. 155, is relied on. In that case, however, only prizes were offered, and the proposition or offer that was made did not provide that the successful architect would be

152    APPELLATE COURTS OF ILLINOIS.

entitled to act as architect for, and supervise the erection of the building. *Palmer v. Central Board of Education of Pittsburg,* 220 Pa. 568; *Walsh v. St. Louis Exposition & Music Hall Ass'n,* 90 Mo. 459; *West Chicago Park Com'rs v. Carmody,* 139 Ill. App. 635.

Further, it is urged that, assuming ratification was a condition precedent, the defendant could not escape liability if it were shown that the Supreme Convention arbitrarily and without cause refused to ratify. We are of the opinion that if the offer were to be interpreted as contended for by the defendant, that is, to the same effect as if the words "subject to ratification by the Supreme Convention," were written in each section, then there might be good reason for holding —considering the offer without anything further— that the defendant was not liable. We are of the opinion that each of the counts 1, 2, 3, 8, 10 and 11 of the amended declaration stated a good cause of action. The judgment, therefore, will be reversed and the cause remanded with directions to overrule the demurrer to those counts.

*Reversed and remanded with directions.*

HOLDOM and WILSON, JJ., concur.