WALTER M. BROWN, RESPONDENT, v. MORRISEY & WAL-
KER, INCORPORATED, A BODY CORPORATE, AP-
PELLANT.

Submitted October 26, 1929—Decided May 19, 1930.

For the appellant, *Quinn, Parsons & Doremus.*

For the respondent, *Ward Kremer.*

The opinion of the court was delivered by

WALKER, CHANCELLOR. This is an appeal from a judgment rendered in the Supreme Court, Monmouth Circuit, in favor of Brown and against Morrisey & Walker, Incorporated.

In April, 1926, Brown became a real estate salesman for Morrisey & Walker, Incorporated, who were sales agent of land in its own name. The relation of the salesman was created by a written contract signed by both parties, and Brown, in addition, alleged that in May, 1926, Morrisey & Walker, Incorporated, by verbal agreement, offered to pay him an additional commission by way of prize or bonus, for selling property being developed by Morrisey & Walker, Incorporated, at Shark River Hills and owned by the Shark River Hills Company, or such other property as the principal might designate. Plaintiff claimed that after this agreement was entered into and sometime in the latter part of May, or the early part of June, 1926, Samual Walker, vice-president of Morrisey & Walker, Incorporated, called together several of the salesmen who were working on the Shark River Hills property, in their office, and there, in the presence of the plaintiff and several other salesmen, including Thomas Ely, their general sales manager, set forth a plan to stimulate sales. He stated that teams of seven men would be formed and that each team would have a captain. He further promised that if a team sold, during the year 1926, an aggregate of $200,000 worth of property, the captain of that team, in addition to the commissions to which he was entitled under the contract, was to receive a prize of $1,000. This was agreed to by the plaintiff, and the promise of Mr. Walker was reiterated at a dinner given to salesmen at the Berkeley-Carteret Hotel.

Testimony was given tending to establish the truth of these statements, and there was further testimony tending to establish the fact that the sales were made of the amount and within the time designated, by the team of which plaintiff was captain, which entitled him to the prize or bonus. That the jury believed this testimony is established by their verdict, after which defendant obtained a rule to show cause why it

should not be set aside and a new trial granted; reserving all its exceptions. This rule, after argument, was discharged, and judgment was duly entered. Then the defendant appealed to this court and filed eleven grounds of appeal, which were argued under the following heads: (1) the admission of illegal evidence; (2) the oral contract upon which Brown relied was in contravention of the statute of frauds and therefore entirely void; and (3) the court erroneously charged the jury that if Morrisey & Walker, Incorporated, had ratified any sales, then Brown would be entitled to claim credit for such sales.

First. The trial court did not err in admitting testimony concerning the payment of commissions to the defendant by the Shark River Hills Company.

A question was directed to Thomas Ely, who testified that he was general sales manager for Morrisey & Walker, Incorporated, which company was interested in the tract known as Shark River Hills, owned by the Shark River Hills Company. The question was as follows:

"Q. Can you tell us whether or not Morrisey & Walker received from the Shark River Hills Company their commission on the sale of the land by Brown and his team?"

And he answered, over objection, "Yes," and was afterwards asked:

"Q. In 1926, can you tell us whether or not the Shark River Hills Company paid the Morrisey & Walker Company any commissions for sales in Shark River Hills?"

And he answered, over objection:

"I assume they received checks for commissions in the regular course of business."

And further:

"They always were paid. Whenever sales were made in due course they received their commissions."

Let it be remembered that the plaintiff claimed a prize or bonus for securing business for the employers, the real estate company, who had a contract with the Shark River Hills Company.

The defendant cites the case of *Temperance Hall Assn.* v. *Giles,* 33 *N. J. L.* 260, to show that this evidence was irrelevant. Mr. Justice Depue, writing the opinion, says that the rule is everywhere stated in general terms that the evidence must be confined to the issue. And so was this evidence. The plaintiff and his team sold for the real estate company, defendant, and he had earned his money, and this evidence tended to establish the issue tendered by plaintiff to defendant. The other authorities cited by defendant showed that in order to be relevant the evidence must be such that it directly touches upon the issue which the parties have made by the pleadings. And such was the testimony in this case.

Second. The oral agreement between Brown and Morrisey & Walker, Incorporated, was not in contravention of the statute of frauds. The section of that statute relied upon by the defendant is *Comp. Stat., p.* 2617, § 10, and it is not pretended that the employment falls within any of the terms of the amendment. *Pamph. L.* 1918, *p.* 1020. Section 10 reads as follows:

"That no broker or real estate agent, selling or exchanging land for or on account of the owner, shall be entitled to any commission for the sale or exchange of any real estate, unless the authority for selling or exchanging such land is in writing, and signed by the owner or his authorized agent, and the rate of commission on the dollar shall have been stated in such authority."

That section, it will be observed, provides that the *rate of commission on the dollar* shall be stated in the written authority. Now, the contract *sub judice* was not one for a particular property at a certain rate of commission on the dollar, for which the property was to be sold. The contract was one for selling property belonging to the Shark River Hills Company, for which Morrisey & Walker, Incorporated, was the agent and had a written contract, and was for the sale of property in the hands of the agent, part of which belonged to the Shark River Hills Company and part of it

belonged to the defendant itself. It was not a contract within the letter or meaning of the statute, and the cases cited by the defendant to support its position do not apply.

In *Malinowski* v. *Lincoln Development Co.*, 103 *N. J. L.* 394, it was held by this court that the tenth section of the statute of frauds is applicable to a salesman working on *commission* exclusively for the owner of lands being marketed in parcels as a real estate development. Now, here the plaintiff was not working "on commission exclusively," nor for the owner of all the lands in question. He was working for a prize as the captain of a team selling lands for the company, who employed him as a salesman, and for the owner of certain lands whom defendant might have sued for commissions under its agreement, if in fact the other party did not pay defendant the commissions earned by its sale. Mr. Justice Parker, writing the opinion, said (at *p.* 395) that commission is defined to be a percentage or allowance made to a factor or agent for transacting business for another. Now, the percentage or allowance must be on the amount of the business done. Here the contract was for a prize or bonus for selling land of an aggregate of $200,000 worth, in which event the captain of the team, in addition to the commissions to which he was entitled under his contract, was to receive $1,000.

It may not be out of place to state that an agreement within the tenth section of the statute of frauds may provide for a gross sum in lieu of the rate of commission on the dollar as required by the literal words of the statute. *Mendles* v. *Danish*, 74 *N. J. L.* 333; *Lustig* v. *Meirick*, 82 *Id.* 498; *Haber* v. *Goldberg*, 92 *Id.* 367. The agreement between the plaintiff and defendant was one for commissions and for a prize or bonus in addition, so it appears to come within both rules; yet, as the statute does not apply to the agreement neither is to be applied in this case.

Third. The charge of the court objected to was as follows:

"Of course, it may be well that when you come to examine some of these sales, such as the Katz sale, if you find

as a fact that the Morrisey & Walker Company ratified that sale even though its terms were contrary to the general sales contract existing between the plaintiff and that company, I, nevertheless, am of opinion, and I so charge, that the Morrisey & Walker Company would not be permitted to take advantage of the Katz contract, even though irregularly made, and then deny plaintiff his commissions; because they cannot take a benefit on something in its behalf by its agent or employe and then deny compensation to that agent or employe for his work in securing it. That is the simple proposition of law that I think is applicable to that situation."

Mr. Walker, secretary and treasurer of Morrisey & Walker, Incorporated, testified that the company had received and was receiving benefits from the sale in question, and that the sale had been ratified by it. Neither counsel for plaintiff nor defendant cited any authority on this portion of the charge. It is the familiar doctrine treated of in works on contract and is to be found in *Clark Cont.* (*3d ed.*) 1914, *p.* 644, that where one person has conferred a benefit in the way of services upon another the law will create an obligation on the part of the other because of the receipt of the benefits, to pay what they are worth.

The offer of a prize may mature into a binding contract in favor of a successful contestant who has complied with the terms of the offer. 13 *Corp. Jur.* 289; *Walsh* v. *St. Louis Exposition,* 16 *Mo. App.* 502.

The judgment under review will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, LLOYD, BODINE, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, DEAR, WELLS, JJ. 12.

*For reversal*—None.