FRED W. JONES, Jr., Judge.
A former general agent sued defendant insurance company for damages based upon the alleged breach of an agreement by the defendant to send plaintiff and his wife on an all-expense paid trip to San Francisco as an award for the agent’s successful partici *888 pation in a sales promotion campaign. Defendant appealed a judgment in favor of plaintiff, contending the trial judge erred “in failing to recognize and honor the implied condition that this convention trip was due only agents in good standing at the time it was hosted.”
Because we agree with the trial judge that a valid contract was confected between the parties and that defendant breached this contract, for the reasons hereinafter explained we affirm.
B. Leonard Critcher entered the life insurance business in the early 1970’s. As a general agent or insurance broker he was authorized to write policies for several different companies, with those agency contracts generally terminable at the will of either Critcher or the insurance company. However, until 1980 Critcher’s primary affiliation was with Pilot Life Insurance Company (“Pilot”). This meant that the agent wrote the majority of his policies for Pilot and received from that company a base salary together with fringe benefits.
On September 1, 1979, by virtue of a written contract Critcher became a general agent for Southland Life Insurance Company (“Southland”). It was understood, though, that his primary affiliation remained with Pilot and that he also would continue to write policies for several other companies.
Soon after his appointment as a general agent for Southland, Critcher began receiving from that company brochures and other printed material encouraging him to participate in an insurance sales promotion campaign. The qualifying period for meeting the stipulated quota of sales ran from January 1, 1980 to December 31, 1981. The reward for agents who met the quota was an all-expense paid trip for them and their spouses to Southland’s “Conference of Champions” to be held in San Francisco in March 1982. At that time Southland had some 400 general agents.
Desiring to win the described trip, as soon as the qualifying period opened Critcher began to write insurance policies with Southland, in preference to other companies he might have selected to give the business. His volume of sales was such that South-land recognized him as an “early qualifier” at a mid-year conference in Dallas in March 1981. In February 1982 the company extended to Critcher a written invitation to attend the San Francisco conference at the expense of Southland. Critcher accepted the invitation and, together with his wife, began preparations to make the forthcoming trip.
In the meantime, in 1980 Critcher terminated his primary affiliation status with Pilot. Subsequently, that relationship was assumed with Philadelphia Life Insurance Company (“Philadelphia”).
By letter dated March 16, 1982 Critcher was advised by Southland that their agency contract was terminated. He was notified shortly thereafter that the invitation to attend the San Francisco convention was can-celled. This litigation ensued.
The thrust of the defense was that the San Francisco convention was impliedly restricted to those who were Southland agents in good standing at the actual time the convention was held, since the obvious purpose of the convention was to promote company interests, which included training of agents. Defendant also pointed out that the promotional material distributed by Southland to its agents contained the following pertinent clause:
“The Company reserves the right to be the sole judge as to whether an Agent or General Agent qualifies for an award, recognition, club or trip.”
It was explained that Critcher’s agency contract with Southland was terminated when the latter learned of the agent’s affiliation with Philadelphia, a business competitor upon whom Southland did not look with favor.
We agree with the trial judge that plaintiff’s suit is an action for breach of contract. Consequently, resolution of the litigation involves the examination and application of our codal articles dealing with contracts.
*889 Essential to the formation of a contract is consent of the parties, as evidenced by an offer and acceptance. La.Civil Code Articles 1797, 1979.
When one party proposes and the other assents, the obligation is complete, and by virtue of the right each has impliedly given to the other, either of them may call for the aid of the law to enforce it. La.C.C. Article 1803.
Somewhat analogous to the case at bar is Schreiner v. Weil Furniture Co., 68 So.2d 149 (Orl.Ct. of App.1953). There the plaintiff was a prizewinner in a “count-the-dots” contest advertised by the defendant in a local newspaper. However, when plaintiff sought to claim her prize defendant attempted to vary the award from that described in the newspaper advertisement. Ruling in favor of plaintiff, the court commented:
“It is possible to make offers to anyone, or to everyone, who may perform a specified act or make a specified promise. The commonest illustration of such offers is furnished by offers of reward for the apprehension or conviction of criminals, or for the return of lost or stolen property-
“There is no doubt that as a result of Mrs. Butscher’s [plaintiff] success in the contest the defendant must be held bound to his obligation. When plaintiff performed all of the requirements of the offer in accordance with the published terms, it created a valid and binding contract, under which she became entitled to the promised rewards. That there was a serious and mutual consideration is obvious.”
Closer to our case from a factual standpoint is decision from another jurisdiction— Brown v. Morrisey & Walker, Inc., 106 N.J.L. 307, 150 A. 330 (1930). The defendant relator, to stimulate sales, had orally promised to his salesmen a cash prize in addition to their commissions if they met a specified quota. Affirming a judgment in favor of a salesman who had achieved the goal but was denied the cash prize, the court held:
“The offer of a prize may mature into a binding contract in favor of a successful contestant who has complied with the terms of the offer.” p. 333
Adverting to our facts, we find that Southland’s printed material pertaining to the San Francisco trip constituted an offer which could be accepted by one of its agents by the performance of certain acts — the sale of a specified quota of insurance. Nowhere was the offer restricted only to those who might be agents of Southland at the time the convention was actually held. By his performance [meeting the sales quota] Critcher made the unilateral contract binding upon the offeror.
Southland received as .consideration for its award of the all-expense paid trip the additional business accruing to it when Critcher deliberately selected Southland over his other companies when writing insurance policies. The incentive, of course, was the prospect of the free trip for the agent and his wife. Southland argues that the convention was to serve primarily as a training session for its agents. We note in our review of the promotional material distributed by the company to its agents that the major portion is devoted to touting the culinary delights and sightseeing attractions of the San Francisco area rather than opportunities for educational enlightenment. In effect, Southland is contending that the reward for an agent’s writing additional business [for the company’s benefit] is the privilege of attending a conference [for the company’s benefit].
Further, acceptance of defendant’s argument that its offer was impliedly restricted to those who were agents at the actual time of the convention would have made the contest meaningless from the standpoint of a general agent, since his agency contract was generally terminable at the will of the company.
We also find no merit in defendant’s assertion that it expressly reserved the right to be the sole judge as to whether an agent qualified for the trip. According to the record evidence, Southland did in fact exer *890 cise its right and notified Critcher of his qualification for the trip.
For these reasons, we affirm the city court judgment, at appellant’s cost.