588 So.2d 1196 (1991)
Edna WOODS
v.
MORGAN CITY LIONS CLUB.
No. 90 CA 1098.
Court of Appeal of Louisiana, First Circuit.
October 18, 1991.
*1197 Gary F. LeGros, Jr., Jeanerette, for Edna Woods.
C. E. Bourg, II, Morgan City, for Morgan City Lions Club.
Edward M. Leonard, Jr., Leonard & Hayes, Morgan City, for Morgan City Newspaper, Inc.
Before WATKINS, CARTER and FOIL, JJ.
WATKINS, Judge.
Plaintiff, Edna Woods, filed suit against the defendant, Morgan City Lions Club (Lions Club), alleging breach of contract for failure to pay the plaintiff a bingo jackpot of $10,000.00.
The dispute over the jackpot prize arose from an alleged error in a newspaper advertisement in the St. Mary Journal, which is a free publication distributed by Morgan City Newspapers, Inc. The advertisement stated that the $10,000.00 blackout jackpot game to be played at the Lions Club on Friday, May 30, 1986, would be won if a player covered his or her card in 52 numbers or less. (See Appendix) The plaintiff covered her card on the 52nd number and attempted to claim the $10,000.00 jackpot. The Lions Club refused to pay the $10,000.00 claiming that the correct number for winning the jackpot was 51. However, plaintiff was paid the customary $1,000.00 consolation prize for being the first person to cover her card. Plaintiff filed suit for the remaining $9,000.00. The Lions Club filed a third party demand against Morgan City Newspapers, Inc., alleging that the Lions Club did not authorize St. Mary Journal to advertise 52 numbers for the May 30, 1986 jackpot game, and that if it was held liable to the plaintiff because of the error, then the third party defendant would be liable to the Lions Club for the amount of the judgment.
The trial court dismissed the third party claim against Morgan City Newspapers, Inc., finding that the error in the advertisement was caused by the Lions Club. The court further found that no contract was formed between the plaintiff and the Lions Club because there was no "meeting of the minds" concerning the number required to win the jackpot. However, the trial court concluded that because the plaintiff relied on the advertisement to her detriment, the Lions Club was liable to the plaintiff for detrimental damages in the amount of $4,000.00. The Lions Club appealed, urging that the trial court erred in dismissing Morgan City Newspapers, Inc., in awarding $4,000.00 damages, and in casting defendant for costs. Plaintiff answered the appeal seeking an increase in her award. Third-party defendant also answered the appeal seeking affirmance of the dismissal of the Lions Club's third-party demand.

FACTS
In 1986 the Morgan City Lions Club conducted bingo games every Friday night. The Lions Club advertised its games on a regular basis in the St. Mary Journal which was delivered every Wednesday. Approximately 13 bingo games were played every Friday night. Ordinarily the 12th game of the evening was the blackout jackpot game with a prize of $10,000.00. The blackout game required the players to cover every *1198 number on their card within a pre-designated number of balls. If no one covered his or her card within the predesignated number of balls, the game would continue until someone covered a card, at which time a consolation prize of $1,000.00 would be awarded. The number of balls allowed to win the jackpot would start at 50. In January and February of 1986, the Lions Club increased the allowed number of balls every week. In March, 1986, because of decreased profits, the Lions Club allegedly decided that it would change the required number to win the jackpot on the 1st and the 15th of every month instead of every week. This policy change was not communicated to the public. From March 1, 1986, through May 30, 1986, the number required to win the jackpot was changed on the 1st and 15th of the month, which was also every other week. But May 30th was the fifth Friday in the month of May. Apparently, the fact that the number had changed every other Friday for the previous 10 weeks led many people to believe that the Lions Club policy was to change the jackpot number every other week. The testimony of several Lions Club members reveals that even some of the members were not sure when the number was scheduled to be changed.
The plaintiff was a regular bingo player at the weekly Lions Club games. She saw the advertisement in the St. Mary Journal on May 28, 1986, and assumed that the required number to win the jackpot on May 30th would be 52 numbers. On May 30th the plaintiff arrived at the bingo game early, purchased her bingo cards and eventually covered her card in 52 numbers during the blackout jackpot game. The plaintiff attempted to collect the $10,000.00 prize and was informed that she was only entitled to the $1,000.00 consolation prize because the caller had made a mistake and called one too many numbers.
The plaintiff testified that no announcement concerning the error in the newspaper was made before or during the jackpot game, nor was any announcement made concerning the number required to win the jackpot. Plaintiff further testified that there were no signs posted in the bingo hall telling the number to win the jackpot.
Mrs. Audrey Bradford, who attended the May 30th bingo game, did not recall any announcements prior to the jackpot game concerning the number required to win. She also testified that on May 30th there were no signs on the wall indicating the required number to win the jackpot. However, the following Friday night she noticed a sign which stated the required number to win the jackpot and which also stated that the number to win the jackpot would be changed on the 1st and the 15th of the month.
Mrs. Helen Marshall attended the May 30th bingo game and testified that the caller announced on ball number 52 that it would be the last number for the jackpot. She did not remember whether the caller announced anything before the jackpot game but she recalled that the number to win was 52.
Mrs. Barbara Turner, plaintiff's sister, also attended the game and stated that there was no announcement concerning the error in the newspaper. Mrs. Turner testified that the caller, Mr. Elmer Howard, announced prior to the jackpot that the required number to win was 52. She also stated that Mr. Howard announced that ball 52 would be the last ball for the jackpot prize.
The remaining witnesses, with the exception of Mrs. Honorina Howard and Clarence Walker, were Lions Club members on May 30, 1986.
Mr. Elmer Howard testified that he was the caller for the second half of the bingo games on May 30, 1986, which included the jackpot game. He stated that he announced the number 51 to win the jackpot game prior to calling any games and also immediately prior to the jackpot game. He also testified that he announced that ball 51 was the last ball to win. He testified that there was a sign on the wall behind him stating that the required number to win the jackpot was 51. Although Mr. Howard was a Lions bingo caller for approximately 3 1/2 years prior to May 30th, he did not recall that the Lions Club had *1199 previously increased the number to win the jackpot every week. He also testified that he did not know about the May 28th advertisement.
Mrs. Honorina Howard stated that her husband announced the number 51 before the jackpot game and on the 51st ball. She also testified that she did not know about the advertisement and that she did not recall a sign with the jackpot number but that there usually was one.
Blair Bergeron was the Lions Club treasurer and testified that it was customary for the caller to announce the required number before the jackpot and on the final number. He stated that there was a sign on the back wall with the required number. He testified that he did not know when the Lions Club increased the numbers.
Joel Patrick Lewis was working at the May 30th bingo game selling pull tabs. He stated that the caller announced prior to the jackpot game that the required number was 51 and when the 51st ball was pulled he announced that it would be the last number to win. He also testified that a sign behind the caller stated the number 51 for the jackpot game. Mr. Lewis testified that he remembered several Lions Club members having a discussion about the error in the newspaper prior to the bingo games on May 30th. Mr. Lewis stated that Mr. Howard participated in this conversation as well as Mr. Kent Ledet, the caller for the first half of the bingo game on May 30th. During the discussion the members decided to announce the number as usual without any disclaimer concerning the newspaper advertisement. Mr. Lewis was unsure when the numbers were changed concerning the jackpot.
Mr. Clarence Walker attended the May 30, 1986 bingo game and testified that he recalled an announcement was made before the jackpot game that the number to win would be 51. He also recalled an announcement when the 51st ball was pulled. However, to the best of his recollection he did not recall an announcement at the beginning of the evening.
Mr. Kent Ledet testified that he felt "reasonably sure" that he and Mr. Howard made an announcement about the number required to win the jackpot because it was customary for them to do so. He stated that he was unaware of the advertisement and did not participate in a discussion prior to the games concerning the error in the advertisement. He was unsure if he paid the plaintiff her consolation prize and stated that he was not aware of any dissatisfaction that night. The first knowledge he had concerning the problem with the advertisement was Sunday. He thereafter ordered that a sign be placed in the bingo hall stating the number required to win the jackpot and the Lions Club policy of changing the numbers on the 1st and 15th of the month. He further testified that there was no sign with the jackpot number on the wall during the night of May 30, 1986. With regard to the error in the advertisement, Mr. Ledet stated that the Lions Club member in charge of the advertisement at that time was Mr. Robert "Rocky" Ducharme, the Lions Club President in May of 1986.
Mr. Andy Shirley, the advertising director of the Daily Review, testified that the paper contacted the Lions Club every Monday concerning the advertisement for the Wednesday paper. The paper agreed to print a retraction; however, this did not occur until after the May 30th bingo game.
Mr. Bill Manning was the advertising account manager who handled the Lions Club account for the newspaper. He testified that he never placed the advertisement without contacting a Lions Club member for verification of the advertisement's content. He stated that he thought he spoke with either Mr. Ledet or Mr. Ducharme concerning the May 28th advertisement, but he was unsure.

THIRD PARTY DEMAND
The Lions Club contends that the trial court erred in finding that the error in the newspaper advertisement was the fault of someone associated with the Lions Club.
Although there was conflicting and inconclusive evidence about how the number 52 was placed in the advertisement, we *1200 cannot say that the trial court's factual determination in this regard is manifestly erroneous. Arceneaux v. Dominque, 365 So.2d 1330 (La.1978). Accordingly, we affirm the dismissal of the Lions Club third-party demand.

CONTRACT
The pertinent remaining issues concern whether a contract existed between the plaintiff and the Lions Club and, if so, whether that contract is voidable because of error.
Essential to the formation of a contract is consent of the parties evidenced by an offer and acceptance. LSA-C.C. art. 1927. Louisiana jurisprudence has recognized that an advertisement may constitute an offer susceptible of giving rise to a binding contract upon acceptance in instances where a prize is offered or where the terms of a contest are announced.[1]Critcher v. Southland Life Ins. Co., 440 So.2d 887 (La.App.2d Cir.1983); Schreiner v. Weil Furniture Co., 68 So.2d 149 (Orl. Ct. of App.1953); Youngblood v. Daily and Weekly Signal Tribune, 15 La.App. 379, 131 So. 604 (La.App.2d Cir.1930). See also dissent in Johnson v. Capital City Ford Company, 85 So.2d 75, 82 (La.App. 1st Cir.1955).
In the instant case there is no dispute that the Lions Club advertised a bingo jackpot which could be won in 52 numbers or less on Friday, May 30, 1986. We find that this advertisement was certain and definite enough to constitute an offer under the circumstances of this case.
Once an offer is made, consent to a contract need not be expressed in words but may be implied by actions of the parties. LSA-C.C. arts. 1939, 1940. Willis v. Allied Insulation Company, 174 So.2d 858 (La.App. 1st Cir.1965); Johnson, 85 So.2d 75. The purchase of the bingo cards by the plaintiff was sufficient to constitute acceptance of the contract. Once the plaintiff performed all of the requirements of the offer in accordance with the published terms, it created a valid and binding contract, under which she became entitled to the promised rewards. Schreiner, 68 So.2d 149.
Ordinarily an offer is revocable at any time prior to acceptance. LSA-C.C. arts. 1930, 1937. However, once the contract is complete, it is not subject to further modification by either party without the consent of the other. Kodel Radio Corporation v. Shuler, 171 La. 469, 131 So. 462 (1930); Willis v. Allied Insulation Company, 174 So.2d 858. In Kodel, the Louisiana Supreme Court held that acceptance of an advertised order completes the contract, which is not subject to further modification by either one of the parties without the consent of the other.
The Lions Club contends that it effectively revoked the offer by making several announcements prior to beginning any bingo games and prior to the jackpot game.
Although there is conflicting evidence concerning an announcement of the number required to win the jackpot on May 30th, it is undisputed that the Lions Club did not make an announcement concerning the error in the advertisement. Because the Lions Club failed to bring the error to the attention of the players, we believe that as a matter of law the alleged notice concerning the number required to win the jackpot, if one was in fact given, was insufficient to apprise the plaintiff that the offer expressed in the advertisement was no longer valid. Like an offer of a reward, the offer of a prize may only be revoked before completion of the requested act when the revocation is made by the same or an equally effective means as the offer. LSA-C.C. arts. 1944, 1945. See dissent in Johnson, 85 So.2d 75. In the instant case, the Lions Club easily could have notified all the participants, individually, when they purchased their bingo cards.
The Lions Club also contends that no valid contract existed because its consent *1201 was vitiated by error. This particular defense is known as contractual negligence.[2]
It is true that "consent" to contract may be vitiated by error, fraud, or duress. LSA-C.C. art. 1948. However, error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party. LSA-C.C. art. 1949. Furthermore, unilateral error does not vitiate consent if the cause of the error was the complaining party's inexcusable neglect in discovering the error. Scott v. Bank of Coushatta, 512 So.2d 356 (La.1987), and cases cited therein. See also New Jersey Life Insurance Co. v. Henri Petetin, Inc., 311 So.2d 454, 461 (La.1975); Stipelcovich v. Mike Persia Chevrolet Co., 391 So.2d 582 (La.App. 4th Cir.1980); Hebert v. Livingston Parish School Bd., 438 So.2d 1141 (La.App. 1st Cir. 1983).
In Scott, the Louisiana Supreme Court set forth what it considered the two prominent factors in the evolution of the contractual negligence defense as follows:
(a) Solemn agreements between contracting parties should not be upset when the error at issue is unilateral, easily detectable, and could have been rectified by a minimal amount of care.
(b) Louisiana courts appear reluctant to vitiate agreements when the complaining party is, either through education or experience, in a position which renders his claim of error particularly difficult to rationalize, accept, or condone.
Scott, 512 So.2d at 362.
The court also noted that Louisiana courts have rejected the defense of unilateral error where the complaining party, through education or experience, had the knowledge or expertise to rectify or discover the error complained of easily. Scott, 512 So.2d at 363.
In the instant case, the Lions Club advertised its bingo games to induce the public to participate for the opportunity to win the offered prizes. As found by the trial court, the content of the advertisement was wholly within the control of the Lions Club which through its members caused the alleged erroneous advertisement. We cannot say that the error was insignificant or inconspicuous as it covered half of a newspaper page and was disseminated without charge to residents in St. Mary Parish two days before the disputed bingo game. Therefore, we can only conclude that the error was easily detectable and correctable by the Lions Club.[3] The fact that no one in charge of the bingo game on May 30th knew about the advertisement shows a complete lack of attention to what was apparently the Lions Club's primary source of advertisement. We further note that the policy in regard to the changing of numbers was peculiarly within the knowledge of the Lions Club, and this policy was never communicated to the public. Because of these facts there is no way that plaintiff can be charged with contributing to the error. Furthermore, the unique circumstances of the case would naturally lead any person to assume that the numbers changed every other week. Under the facts and circumstances of this case, the Lions Club may not seek to void its contract with the plaintiff for unilateral error.
Finally, we address the Lions Club's assignment of error alleging trial court error in casting defendants for costs in this matter. The trial court has great discretion in assessing costs and may assess costs against any party as the court may consider equitable. LSA-C.C.P. art. *1202 1920. We find no abuse of discretion in this case.
For the foregoing reasons we affirm the trial court judgment in favor of the plaintiff and amend the judgment to award the plaintiff $9,000.00. Defendant Lions Club is cast for all costs of this appeal.
AMENDED, AFFIRMED AS AMENDED.
*1203 
NOTES
[1] For other advertisements constituting an offer see Willis v. Allied Insulation Company, 174 So.2d 858 (La.App. 1st Cir.1965) (employment offer); Johnson v. Capital City Ford Company, 85 So.2d 75 (La.App. 1st Cir.1955) (automobile trade-in offer).
[2] For an excellent discussion of the defense of contractual negligence see Palmer, Contractual Negligence in the Civil LawThe Evolution of a Defense to Actions For Error, 50 Tul.L.Rev. 1 (1975).
[3] Although the Lions Club was unable to print a timely retraction, as the St. Mary Journal was a weekly paper, it could have notified the participants of the game, individually, prior to the purchase of their bingo cards.