The opinion of the court was delivered by
Nicholls, C. J.
This ease has, both through the testimony and the argument, taken a much broader scope than we think the legal situation called for.
A large portion of the evidence was directed to the attempted-ascertainment of what the defendant at the sale of the 11th of January, 1893, intended to sell, and what the plaintiff intended to buy, *1494 through conversations between the plaintiff and the defendant, at a time prior to the sale, when the former was either at one time, as a broker acting for William Henderson, or on his own behalf at another, seeking to purchase the property from the defendant at private sale. These negotiations failed and were abandoned. The sale of the 11th of January was not a private sale, nor an auction sale made in consummation of any arrangment or understanding between plaintiff and defendant, but an independent, distinct act by which the property was offered for sale to any one who would be the last and highest bidder on the terms and conditions set forth in the advertisement. Plaintiff stands as to his rights and'obligations precisely in che same position which any other purchaser who had no prior dealing with the defendant up to the date of sale would have occupied, purchasing under the same advertisement.
The questions before the court arel (1) Whether the auctioneer was authorized by defendant to sell the property; (2) whether the advertisement of the property for sale as made, is to be taken as the act of the company, and (3) what are the rights and obligations of parties resulting from a sale of the property in its then condition under the said advertisement.
We do not understand defendant to deny that the property was sent to sale by proper authority. The minutes of the finance committee of the defendant company of the 27th of October, 1892, of the 30th of November, 1892, of 24th of December, 1891, the letter of T. R. Chaney, its first vice president, of November 2, 1892, to Mr. Wjnship, and the course pursued by the defendant since the adjudication would establish that fact, if it were controverted. Defendants’ position as we understand it is: (1) That although the auctioneers were authorized to sell the property, they were not authorized to sell it in manner such as would convey to the purchaser title to the machinery in the building, and (2) that a sale under the advertisement as made would not have that effect. The finance committee seems to have delegated to Vice President Chaney “ the power to instruct that preparations be made for an auction sale,” and that gentleman for that purpose placed himself in communication with Second Vice President Winship. In his letter to the latter of November 2, 1892, referring to the sale, he said: “I have, however, brought it to the attention of the finance committee, and recommend that we take necessary steps to offer this property, as proposed by *1495 Robinson & Underwood, at auction, which recommendation they approved, and it will therefore be in order for you to put this in hand. The usual terms of sale down in your section, I believe, are one-third cash, balance in one, two and three years on mortgage. I expect to be in New Orleans before this property will be offered, and will agree with you on limit price.”
The auctioneer, Robinson, says he was called on by Mr. Winship with regard to the sale. “ The instructions he gave me were simply handing me the title. His instructions were simply to advertise the property as designated in the title. As I understand, his instructions were simply to advertise the property belonging to the Union Oil Company, two pieces of realty as designated in the title. His instructions were specifically to sell the property as advertised. I had written out the advertisement, stating that the property was equipped with all modern appurtenances of machinery, but Mr. Winship very emphatically and positively eliminated that part of the advertisement, and stated to me that under no circumstances was there any machinery to be sold. It was not my province to make any further inquiry, as I was simply delegated to make the sale.” Being asked the question: “You were authorized to sell the machinery mentioned in the advertisement,” the boilers, filterers and pumps, “ and no other machinery?” he answered, “No other machinery. ” And being further asked: “And after you had drawn up an advertisement including all the machinery and buildings Mr. Winship objected to it and eliminated it?” he answered: “Yes, I had prepared a very elaborate advertisement, dwelling upon the machinery contained in the building, as I knew it would be a very attractive feature.”
This testimony was admitted over plaintiff’s objections and under a bill of exceptions reserved. We allude to it now only as going to show that the advertisement, as finally made and acted upon, was an advertisement approved of by Mr. Winship and prepared under his eye and direction. There is no doubt that Mr. Winship believed that a sale under this advertisement as made would exclude the machinery in the building from passing with the property as part of it, and that his intention was that it should so announce to bidders. The question, however, is whether, as a matter of law, his belief was well founded and his intentions could save the situation if he were mistaken. The rights of plaintiff and defendant are to be tested by the actual legal consequences flowing from a sale made *1496 under the particular advertisement as being the authorized advertisement of the company. These consequences can not be altered or checked because the agent of the company may have had an erroneous belief as to what the advertisement, as written, meant, or- what, it would legally convey. The advertisement controlled the rights and obligations of the parties. Layton vs. Hennen, 3 An. 1; Poree vs. Bonneval, 6 An. 388.
The sale being at auction and offered, to the last and highest bidder without reservation and limit, the adjudicatee through the adjudication, and the deposit made by him, acquired a vested right to the ownership of whatever legally passed under the advertisement. The price offered by the last and highest bidder has no bearing upon the legal question as to what, was offered for sale and what was sold. The determination of that question rests upon matters existing prior to the adjudication.
Looking at the building at the date of the sale, without reference to the advertisement, we are of the opinion that the machinery at that time formed part of the real esoate as immovable by destination. It was placed upon the property by its owner for its service and improvement, and had been so used. C. O. Arts. 468, 469. And, though for special reasons, subsequent owners may have discontinued this use, for a certain time, it has never been dismantled. A mere intention of dismantling, remaining unexecuted up to the time that third persons acquired ownership of the property in its actually existing condition, would produce no effect as against such person.
It did not follow, however, that because the machinery at the time of the adjudication was part of the immovables by destination that it necessarily passed to the adjudicatee, for it was within the power of the seller through his advertisement (if properly worded) to operate its legal severance from the land at the very moment of the sale. This whole case turns upon whether such severance was operated either expressly or through equivalent implication. This is really the point upon which the parties are at issue. Plaintiff points us to that portion of the advertisement wherein the object offered for sale is declared to be a certain piece or portion of land. together with the buildings and improvements thereon, and all rights, ways, privileges and appurtenances thereunto belonging, or in any wise appertaining. He claims that even without these words the *1497 machinery (if it was in reality part of the immovable property) would have passed by the sale unless there were in the advertisement words of reservation or exclusion, but that with these wards added, the matter is taken beyond debate. Defendant, on the other-hand, insists that the advertisement shows plainly and unmistakably on its face that the machinery was not included; that in describing the property it is referred to as <! equipped with water connections with the Mississippi river, together with boilers, filters and pumps, which will be sold with the property, thereby securing free water;” that this special enumeration of particular portions of the machinery clearly excludes the idea that any other objects besides.those particularly mentioned were to be disposed of with the land, and that this same fact is specially drawn to the attention of bidders through the auctioneers’ headlines to the advertisement.
The plaintiff replies that the mention of these special articles was simply the selection by the auctioneer of some of the salient advantages of the property in order to attract special attention, as is eus- • tomary in all auction sales, nothing more; that the machinery would hive passed without any allusion to “improvements” and “appurtenances ” as a matter of course, but that particular mention of the “improvements” and “appurtenances” as forming part of the object to be sold withdraws from the consideration of the case ' all mere inferences and conjectures; that if it had been the intention' of the vendor to have excluded the machinery from the sale it was his duty to have done so in clear and exact terms, and everything obscure or ambiguous is to be construed against him. C. C. Arts. 2474, 2461.
Holding as we do that the machinery was, at the date of the sale, immovable by destination, we think in the absence of words of reservation and exclusion in the advertisement, it passed to the purchaser of the real estate, as part thereof, and that the judgment of the District Court to that effect was correct. Williamson vs. Richardson, Sheriff, 31 An. 686; Hollingsworth vs. Chaffe, 33 An. 554.
The judgment appealed from is hereby affirmed.