(49 South. 521.)

No. 17,179.

LOYD MERCANTILE CO., Limited, v. LONG (WOODWARD, WIGHT & CO. et al., Interveners).

(April 26, 1909. Rehearing Denied May 24, 1909.)

1. PAYMENT (§ 73*)—EVIDENCE.

Defendant having the burden of proof as to payment, a finding against payment is sustained; he alone testifying thereto, and being contradicted by a disinterested witness.

[Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 220–225, 232–238; Dec. Dig. § 73.*]

2. SALES (§ 23*)—COUNTERMANDING ORDER.

It was too late for defendant to countermand his order given plaintiff for an implement to be manufactured, where the party with whom plaintiff placed the order had commenced its construction before the countermand.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 45; Dec. Dig. § 23.*]

Appeal from Thirteenth Judicial District Court, Parish of Rapides; Wilbur Fisk Blackman, Judge.

Action by the Loyd Mercantile Company, Limited, against H. F. Long; Woodward, Wight & Co. and another intervening. From an adverse judgment, defendant appeals. Affirmed.

H. F. Long, in pro. per. Blackman & Overton, for appellee.

PROVOSTY, J. Defendant had been operating a sawmill, and was indebted to plaintiff, a neighboring mercantile concern, for advances in money and supplies for running the mill, when he formed a partnership with one Burnum for continuing the operation of the mill. Shortly thereafter the partnership entered into an agreement with plaintiff by which the output of the mill was to be delivered to plaintiff, and plaintiff was to advance to the partnership $12 thereon per thousand feet, and the price of the lumber, when sold, was to be applied to the reimbursement of the said advance, and any surplus was to be applied to the payment of the said individual debt of defendant.

This suit is brought on an itemized open account purporting to represent the said individual debt of defendant, and is accompanied by attachment.

Defendant contends that the agreement with the partnership went into effect on the 1st of July, and that his individual account should have been closed on that date, and that all items subsequent to that date are chargeable to the partnership, and not to him individually.

The account is made to close on the 24th of August, and we think properly, as that date is the date at which the agreement with the partnership was finally concluded. To that effect is the testimony of Messrs. Lyle, Boone, Jones, and Burnum, with only defendant himself to the contrary.

Defendant contests the correctness of certain items. He testifies that the item, "March 30, cash personally, $100," is not due, because the money was never paid to him; that the item, "April 10, check to Bank of Lecompte, $330," is not due, because he delivered ties in payment of the amount; that the item, "August 14, 1 mandrel and pulley, $67," is not due, because the order given by him for these things was countermanded by him; that the item, "April 15, forwarded from account of W. R. Futch, $157.65," is on the wrong side of the account: that it should be a credit, instead of a debit; and, finally, that the credit item, "By W. R. Futch, $100," should be $531.20.

Defendant's statement, as a witness, that he delivered ties in payment of the $330, is contradicted by that of Mr. Peninger, a disinterested witness. The burden of proof to establish the payment was on defendant. We need hardly add that, in this condition of the evidence, that burden has not been discharged.

The order for the mandrel and pulley was countermanded, but too late. Woodward, Wight & Co., of New Orleans, with whom the order had been placed, wrote back that the work of constructing the mandrel had already begun and that it was too late to countermand. Plaintiff paid the $67 to Woodward, Wight & Co., and properly charged it to defendant.

The history of the other items is this: Defendant made and sold ties. He and one W. R. Futch, who was buying ties for the Quigley Construction Company, of Beaumont, Tex., made an agreement for ties. As Futch got paid for the ties only after he had delivered them, he made an agreement with plaintiff to advance him the money for paying defendant, and instructed plaintiff to let defendant have whatever he would call for on his (Futch's) account. Under this arrangement, Mr. Lyle, the manager of plaintiff, instructed Mr. Peninger, the bookkeeper, to let defendant have $100, and Mr. Peninger handed that amount to defendant in person. But, Mr. Lyle having failed to explain to Mr. Peninger that the amount was being paid to defendant for Futch's account and was to be charged to Futch, Mr. Peninger charged it to defendant, thinking it was an ordinary advance to defendant. Later the mistake was discovered, and defendant was credited for the amount, and Futch debited with it. Thereafter other amounts were furnished defendant for account of Futch. These amounts do not figure on the account sued on. They were charged to Futch, and aggregated $688.-85. When defendant and Futch came to settle, it was found that Futch owed defendant only $531.20, so that defendant had received the difference between $688.85 and $531.20, namely, $157.65, in excess of what Futch owed him. The difference had to be credited to Futch and debited to defendant, and this was done, to the entire satisfaction of defendant at the time. The Futch transaction figures in defendant's monthly statement in totals, by way of memorandum. Defendant is there debited with the total amount given him for Futch, $688.85, and is credited with the total amount due him by Futch, $531.20, leaving the difference, viz., $157.65, to the debit of defendant, as in the account sued on.

Defendant complains of a certain credit of $509. That sum represents certain drafts which he gave plaintiff to be used in paying a certain individual debt of his. He afterwards paid this debt himself out of the funds of the partnership, and the $509 remained to his credit. The only effect of this credit is to reduce plaintiff's demand; hence its presence in the account affords defendant no ground of complaint.

The debt of the partnership is not involved in this suit; hence all the testimony and all the argument in that connection is irrelevant.

The alleged grievance of defendant on the score of plaintiff's not having sold the lumber when it could have been sold for an amount sufficient to wipe out both debts is an afterthought. Burnum testifies that there never was any disagreement in connection with the selling of the lumber.

The attachment was properly sued out. Indeed, it may be said to be sustained by defendant's own statement on the witness stand.

Judgment affirmed.

MONROE, J., takes no part, not having heard the argument.