Nos. 3804 and 3805

Second Circuit

——

YOUNGBLOOD v. DAILY AND WEEKLY
SIGNAL TRIBUNE

and

HEFLIN v. DAILY AND WEEKLY
SIGNAL TRIBUNE

——

(December 23, 1930.   Opinion and Decree.)
(January 27, 1931.   Rehearing Refused.)

——

Allen S. Drew, of Minden, attorney for plaintiffs, appellees.

John T. Campbell and Coleman Lindsey, of Minden, attorneys for defendant, appellant.

ODOM, J. The defendant is a daily and weekly newspaper published in the city of Minden by Jones and Harper, Incorporated, a corporation with W. B. Jones as secretary and manager. In the early part of September, 1928, the newspaper, through its management, inaugurated a campaign to increase its circulation and in order to induce outsiders to solicit subscriptions for the paper it offered prizes to the contestants as follows:

To the person securing the greatest number of cash subscriptions, one Buick Master Six Four-door Sedan Automobile, valued at $1549.00; and to the contestant securing the next highest number of cash subscriptions, one Chrysler-Plymouth Four-door Sedan Car, valued at $895.00.

Seven other prizes consisting of diamond rings, ranging in value from $200 down to $25, were also offered.

The paper in its issue dated September 7th, published rules governing the contest and stated that the contest would begin on September 10th and close on November 7th A number of persons, including these plaintiffs, Mrs. Tressie Youngblood and Mrs. Stella Heflin, entered the contest and worked until the latter part of October, each obtaining a number of cash subscriptions.

They allege that they entered the contest in good faith and devoted their time to the work of securing subscriptions and incurred considerable expense while doing so. They allege that they continued in the contest until defendant arbitrarily and without their consent brought the contest to a close prior to the date on which it was advertised to end and that defendant took up their books, receipts and paraphernalia and ordered them to cease work. Mrs. Youngblood alleges that she won the first prize, the Buick car, and Mrs. Heflin that she won the second prize, the Chrysler, and that under the contract and rules of the contest these prizes should be awarded to them and the cars delivered and that in case defendant fails to deliver the cars it should pay to them the price thereof and they prayed accordingly.

In the alternative they ask that in case the court should hold that they were not entitled to enforce specific performance of the contract they should be awarded damages for its breach.

Defendant excepted to the petitions on the ground that they set out no cause of action, which exceptions were overruled. It then answered, admitting that it had inaugurated the contest and that plaintiffs were contestants and had secured the number of cash subscriptions which they claimed, but denied that they were entitled to receive the automobiles.

This answer was filed on December 3, 1928. On January 5, 1929, plaintiffs filed amended petitions which were allowed by

the court. On January 21st, defendant by written motion excepted to the ruling of the court allowing the amended petitions on the ground that they substituted new parties and asked that the amended petitions be ruled out and disallowed. These motions were overruled.

On February 8th, defendant excepted to the capacity of plaintiffs to sue and stand in judgment, which exceptions were also overruled.

The trial of the cases on their merits resulted in judgments rejecting plaintiffs' demands for specific performance of the contract but awarding them damages for its breach. Defendant appealed and plaintiffs answered the appeal and asked that the judgments be amended so as to conform to the prayer of their petitions.

Defendant in this court insists that each of its exceptions and motions were well founded and should have been sustained. We proceed to dispose of them in the order filed.

## EXCEPTION OF NO CAUSE OF ACTION

These exceptions are grounded upon the proposition that plaintiffs did not allege that they performed or offered to perform their part of the contract and that they did not allege that defendant was put in default prior to the filing of these suits.

These exceptions are not well founded and were properly overruled. Plaintiffs alleged that they entered the contest in good faith, worked continuously for approximately forty days, secured subscriptions, turned in to defendant all cash which they received, with the names, their addresses, of all subscribers; made reports daily, all in strict accordance with the published rules and regulations governing the contest, and that they did not cease work until they were ordered to do so by defendant; that defendant actively breached its contract with them by arbitrarily closing the contest without their consent previous to the date on which it was advertised to close and that it took from them all their books, receipts and paraphernalia and ordered them to cease work. According to these allegations they performed their part of the contract.

They did not allege that they put defendant in default previous to filing their suits. As it was not necessary to put defendant in default no such allegation was necessary. Accepting plaintiffs' allegations as true, and we must do so, for the purpose of these exceptions, defendant actively breached its contract with them. A contract is actively violated when one of the parties to it does something inconsistent with the obligation he has assumed. (Civil Code, art. 1931.) The closing of the contest and ordering plaintiffs to cease work was inconsistent with the obligation which defendant had assumed. Where there is an active violation of the contract, the creditor is under no obligation to put the debtor in default. (Civil Code, art. 1932.)

## AS TO ALLOWANCE OF THE AMENDED PETITION

These suits are against "The Daily and Weekly Tribune," a newspaper. In the original petitions plaintiffs alleged that the paper was published by W. B. Jones, sole owner. In the amended petitions it is alleged that the paper was owned and published by Jones and Harper, Incorporated, a corporation. These amendments were filed and allowed by the court on January

5th, and the cases were not tried until April 3rd. Article 419 of the Code of Practice reads as follows:

"After issue joined, the plaintiff may, with the leave of the court, amend his original petition, provided the amendment does not alter the substance of his demand by making it different from the one originally brought."

This amendment did not alter the substance of plaintiffs'· demands. There was no change at all in the demands. In the original petitions it was alleged that the paper was owned and published by W. B. Jones, which allegation was so amended as to show that it was owned and published by a corporation.

The amendment did not delay proceedings and did not work hardship or injustice upon anyone. New service was made not only on the newspaper but on Jones and Harper, Incorporated, as the law provides.

Counsel argue that the amendment substituted new parties defendant. The defendant named in the original petitions as well as the amended petitions is a newspaper itself. The only change the amendments made was as to the ownership.

The lower court did not err in permitting plaintiffs to amend their petitions.

## AS TO WANT OF CAPACITY

Plaintiffs are married women and were not joined in these suits by their husbands. Act No. 283 of 1928, page 548, emancipates married women and relieves them of all incapacity to which they were originally subjected. The purpose of the act was:

"* * to abolish the authority of husbands over married women, in respect to contracts and obligations and to appearance in judicial proceedings";

Section 2 of the act reads as follows:

"That married women shall have capacity to institute or defend suits, or otherwise appear in judicial proceedings, and to stand in judgment, without the authority of their husbands, or of the Judge."

The contract involved in these suits was made by these plaintiffs without the assistance of their husbands but apparently with their sanction. It is not suggested that plaintiffs did not have capacity to make the contract and certainly if they had capacity to contract they had capacity to enforce the contract.

Counsel argue that if defendant is indebted to these plaintiffs, the debts are due the community which exists between plaintiffs and their husbands and that the husbands alone can bring suit to collect it. As to whether the amounts collected through these suits, if any, would be community assets under the circumstances disclosed, we express no opinion. But conceding that they would be community assets, defendant could suffer no injury by reason of the fact that plaintiffs were not specifically authorized by their husbands to bring the suits, for as a matter of fact the husbands sanctioned the suits by joining their wives in the negotiations leading up to their filings, in securing counsel and participating in discussion looking to a compromise of the cases before the suits were filed. They were present during the entire proceedings and under the circumstances we think a judgment rendered against defendant in these suits would be res adjudicata and fully protect defendant. These exceptions were properly overruled by the court.

## ON THE MERITS

The defendant employed the Coleman Circulation Company of Jackson, Mississippi, to conduct the contest and it sent its representative, Mr. Womeldorf, to Minden to take charge. It was through Womeldorf that all negotiations were carried on. Mr. Jones, the manager of the paper and of the corporation which published it, was present and apparently sanctioned all Womeldorf did, although he took no active part. The contest was not a financial success from the standpoint of defendant. The contestants did not secure the cash subscriptions anticipated and for that reason Womeldorf called all the contestants in before the date originally set for the closing of the contest and explained to them that the newspaper could not afford to go on with it and asked them to consent to close it. They refused unless he would distribute the prizes according to the standing of the contestants at that time. Womeldorf refused to do that but agreed to pay each ten per cent of the amount received on subscriptions, which proposition was not accepted and the contestants were told that the contest was at an end.

It is contended by defendant that Womeldorf had no authority to close the contest and that Jones, publisher and manager of the paper, did not sanction his conduct in doing so. The testimony satisfies us, however, that Jones knew all and sanctioned the steps taken by Womeldorf. After the contest was called off and the contestants had expressed dissatisfaction Womeldorf communicated with them and invited them to return and re-enter the contest and in the issue of the paper published on October 23rd, there appeared the following notice:

"The Signal-Tribune
    "Subscription Contest
    "The question of discontinuing the Signal-Tribune Subscription Contest was discussed some days ago by some of the interested parties. Owing to the lack of interest on the part of the public and the contestants, it seemed that it might be advisable to call the contest off. But some of the contestants did not agree to this so the contest is being continued as originally advertised."

These plaintiffs refused to continue. We do not think they were under any obligation to do so. Defendant had already defaulted on its contract and its offer to complete it came too late. Enders v. Gingras, 38 La. Ann. 773; Southport Mill v. Ansley, 160 La. 131, 140, 106 So. 720.

However, we think Jones as manager of the paper was in good faith in his proposal to permit the contestants to continue after he learned that they were dissatisfied. He no doubt saw that he had driven a hard bargain but was willing to abide the consequences. Plaintiffs refused to continue on account of the fact, they say, that Womeldorf imposed new conditions with which they could not comply. But they admit that they were tired, disgusted, and wanted to quit.

We do not think this is a case where the court should order a specific performance of the contract to deliver the cars or their values. These plaintiffs can be adequately compensated in damages for the loss they have sustained on account of defendant's failure to perform its part of the contract.

In the case of Pratt v. McCoy, 128 La. 570, on page 617, 54 So. 1012, 1029, we find the following statement, to-wit:

"Specific performance has never been favored in our law. This is evidenced by a long line of decisions. City v. Railroad Co., 44 La. Ann. 64, 10 So. 401; Solomon v. Diefenthal, 46 La. Ann. 903, 15 So. 183;

Rice v. Rice, 46 La. Ann. 712, 15 So. 538; Mirandona v. Burg, 49 La. Ann. 657, 21 So. 723; Laroussini v. Werlein, 48 La. Ann. 13, 18 So. 704; Caperton v. Forrey, 49 La. Ann. 872, 21 So. 600; Citizens' Bank v. James, 26 La. Ann. 267. In the first of these cases, the court went so far as to announce broadly that:

" 'It is only when no adequate compensation can be made in damages that courts of this state can decree a specific performance of a contract. That decree cannot be demanded as a matter of right.'

"True, in Girault v. Feucht, 117 La. 276, 41 So. 572, the court qualified that announcement. Still the extreme reluctance of our courts to enforce specific performance remains in full force. Code Napoleon, art. 1142, provides that:

" 'Every obligation to do or not to do resolves itself into a claim for damages in case of inexecution on the part of the debtor.' "

Specific performance under contracts to do or not to do (Civ. Code, art. 1926) is not an absolute right, but rests largely within the discretion of the court. City of New Orleans v. Railroad Co., 44 La. Ann. 64, 10 So. 401; New Orleans Polo Club v. New Orleans Jockey Club, 128 La. 1044, 55 So. 668.

Each of the plaintiffs worked thirty-one days. Mrs. Youngblood used a car and paid the expense of its operation. The lower court allowed her $155 for her services and $200 for the use and expense of her automobile, or a total of $355. Mrs. Heflin was at no expense and the court allowed her $155 for her time.

We affirm these judgments because we think they do substantial justice between the parties.

Judgments affirmed, the defendant to pay all costs.

DREW, J., recused.