**BRANDIN SLATE CO., Inc., v. FORNEA.**

**No. 1891.**

Court of Appeal of Louisiana. First Circuit.

Oct. 5, 1938.

Talley & Richardson, of Bogalusa, for appellant.

Benj. W. Miller, of Bogalusa, for appellee.

OTT, Judge.

The suit is to recover $311.10, the balance alleged to be due for shingles and roofing material sold defendant for recovering her home, which also includes an item of $10 for labor furnished for part of the work. The original order for the material, signed by the defendant, was for $385 worth of asbestos shingles and other material for the roofing. The order provides for the payment of $96.25 cash on delivery, and the balance in one, two and three months. After the order for the roofing was made out and signed, a memorandum was placed on the order, across the front, reading as follows: "not applied." This notation on the order was made by the representative of the company before he sent in the order to be filled. Mrs. Fornea · knew nothing of this memorandum on the original order which she had signed, and it is shown that this memorandum was made by the agent of the company purely as a matter of information, and of course could not be binding on the defendant, nor could it have any effect in the interpretation of the terms of the order.

It is the contention of the defendant that plaintiff's representative agreed at the time the order was signed that his company would apply the roofing and guarantee the roof against leaks for ten years; that the defendant would pay for the labor which would amount to the sum of $60, and plaintiff was to procure the workmen to properly apply the roof. Mrs. Fornea claims that the plaintiff company did not furnish the necessary labor to properly apply the roofing; that because of the long delay in applying the roof and the improper application of the shingles, her home was damaged by rains to the extent of $750 for which amount she reconvenes and asks for judgment against the plaintiff in that amount.

The trial judge rendered judgment in favor of plaintiff as prayed for and rejected the reconventional demand of the defendant. She has appealed.

When the defendant offered evidence to prove that plaintiff's representative agreed when the order was signed that his company would apply the roof and guarantee the job, objection was made to the introduction of such evidence on the ground that it was an effort to vary by parol the terms of the written order. The evidence was admitted subject to the objection.

We think the evidence was admissible. Parol evidence is admissible to prove an independent collateral agreement relating to the written agreement where the collateral agreement is not in conflict with the written agreement, and where the parole agreement does not contradict the writing but merely covers an additional and collateral undertaking. The verbal agreement to apply the roof, if there was such an agreement, would not be inconsistent with or contradict the written order for the material, but would be in the nature of a contemporaneous collateral agreement to do something in addition to the obligation covered by the written order. Dwight et

al. v. Linton, 3 Rob. 57; New Orleans & Carrollton R. R. Company v. Darms, 39 La. Ann. 766, 2 So. 230; McConnell v. Harris Chevrolet Company, Inc., La.App., 147 So. 827.

Of course, the defendant carried the burden of proving this alleged independent collateral agreement. The question for decision, therefore, resolves itself into a question of fact as to whether or not the plaintiff did verbally agree to apply the roof and guarantee it against leaks. The trial judge found that the defendant had failed to prove such an agreement, and we are asked to reach a different conclusion from the written record as it comes to us.

The representative of the plaintiff company who sold the defendant the roofing states that he measured the house to find out how many shingles it would take to cover the house and also to find out how much the labor would cost to apply the shingles; that he told Mrs. Fornea it would cost $445 if his company applied the roof, but if his company merely sold the material, the cost would be $385; that Mrs. Fornea stated that there was a man in the neighborhood who owed her a hundred dollars, and that this man had worked on the roof; that the order was then made out for the material only and his company was not to apply the roof. This witness says that he did endeavor to get workmen for Mrs. Fornea, and went to see the man that owed her and had him help in measuring the roof; that his efforts in getting workmen to apply the roof were merely for the purpose of assisting and accommodating Mrs. Fornea in getting the roof applied.

Mrs. Fornea and her witnesses claim that the representative of plaintiff agreed at the time the order was signed to get men to apply the roof, and that $60 was allowed for that purpose, which amount Mrs. Fornea was to pay; that the representative did send some men to put on the roof, but that they drug out the work and did a defective job. The evidence is not clear as to who did actually procure and hire these men who first worked on the job, but it is clear from the evidence that Mrs. Fornea paid them with her own checks, and she must have known something about the number of days and hours they worked and what they were to receive for their labor, otherwise she would not have known how much to pay them.

The material for the roofing was sent out October 28, 1936, and on November 18th following, defendant sent plaintiff a telegram to send men out to complete the job, or come and get the roofing and refund her money. This telegram was answered by the plaintiff the same day in a letter stating that the company had not agreed to apply the roof. On November 24th, Mrs. Fornea wrote plaintiff stating, among other things, that the representative of the company came up and measured her house and told her that the company would put on an asbestos roof complete for $445, furnishing everything, or if she would get some man to apply the roofing in the neighborhood, the company would furnish all material for $385, and in case the man she secured could not do the work, she was to call Mr. Anderson at Bogalusa who would send the men to do the work and she was to pay them $60.

From the above letter, we think it is clear that Mrs. Fornea understood that she was to get some local man to apply the roof whom she was to pay herself, and if she could not get such a man, Mr. Anderson of Bogalusa was to help her secure the necessary mechanics to put on the roof and she would pay them. Mr. Anderson had sold some roofing for plaintiff on a commission basis, but he was not their agent, nor did he have anything to do with selling the material to Mrs. Fornea. He did make an effort to assist Mrs. Fornea in getting men to do a good job in applying the roof, but this was merely an accommodation to her.

The representative of the company who sold the order, wrote defendant a letter the latter part of November stating that a roofing mechanic would be on the job in a few days; that this mechanic was a brother of the one who had been working on the job, but that he was a good mechanic and would finish the job. A few weeks later the representative ordered from his company additional shingles amounting to $12.35, and the company paid $10 for applying the shingles, but it appears that this was for a porch not included in the original order. It appears to us that the effort made by the plaintiff's representative to get workmen on this job was in order to accommodate Mrs. Fornea who had agreed to pay for the labor in applying her roof.

It seems rather unlikely that Mrs. Fornea would have signed an order for the

material only if the plaintiff was to apply it at a total cost of $445. The natural thing to have done under such circumstances would have been to let plaintiff hire the men, fix their compensation and pay them direct. It is obvious that Mrs. Fornea was anxious for local men to do the work if they could, and, no doubt, she was desirous of getting the man who owed her a debt to do some of the work on the job.

A careful review of the testimony fails to convince us that the trial judge was in error in his finding of fact, and we see no reason to disturb his judgment.

For the reasons assigned, the judgment is affirmed at the cost of the appellant.