85 So.2d 75 (1955)
Leland H. JOHNSON, Plaintiff-Appellee,
v.
CAPITAL CITY FORD COMPANY, Inc., Defendant-Appellant.
No. 4098.
Court of Appeal of Louisiana, First Circuit.
December 30, 1955.
Rehearing Denied February 3, 1956.
Writ of Certiorari Denied March 26, 1956.
*76 Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for appellant.
Kantrow, Spaht & West, R. L. Kleinpeter, Baton Rouge, for appellee.
TATE, Judge.
This suit is for specific performance of a contractual obligation allegedly resulting from plaintiff's acceptance by act (without negotiation or other discussion) of an alleged offer made by newspaper advertisement to the public by defendant automobile dealer. Defendant dealer appeals from judgment of the District Court decreeing specific performance of the alleged obligation; plaintiff Johnson answered this appeal, praying for amendment of the decree.
The basic question involved is whether the newspaper advertisement in question constituted an "offer" rather than merely an invitation to bargain. If the former, *77 a secondary question for determination is whether any act or omission of plaintiff-acceptor-obligee waived his right to require the defendant-offeror-obligor to perform the obligation resulting from plaintiff's acceptance. If as contended by defendant the newspaper advertisement was merely an invitation to bargain, then of course defendant's objection to parol evidence as enlarging or varying a certain written contract in evidence was well founded; if, on the other hand, this newspaper advertisement constituted a continuing offer which the plaintiff accepted by such purchase, and thus as the District Court found, created a contemporaneous collateral obligation of defendant to do something in addition to the obligation embodied in the written contract, then of course such evidence was correctly admitted to prove the existence of this independent, collateral contract.
When the 1955 models were about to appear, defendant Ford dealer in an effort to dispose of an excessive supply of 1954 models (which were shortly to be outmoded by the 1955 Ford cars) engaged in an intensive advertising campaign by newspaper and radio, the first day's advertisement concerning which is self-explanatory:
 ------------------------------------------------------------------
 "TWO FOR ONE
 . . . . . . . . . . . . . . . . .For two weeks
 BUY A NEW '54 FORD NOW
 TRADE EVEN FOR A '55 FORD
 Don't WaitBuy a 1954 Ford now, when the
 1955 models come out we'll trade even for your
 '54. You pay only sales tax and license fee.
 Your '55 Ford will be the same model, same body
 style, accessory group, etc. A sure thing for
 youa gamble for us, but we'll take it. Hurry,
 though, this offer good only for the remainder
 of September.
 -----------------------------
 The 1954 car must be returned
 with only normal
 wear and tear. Physical
 damage, such as dented fenders, CAPITAL CITY FORD
 torn upholstery, etc. CO., INC.
 must be charged to owner or 1849 North St.Dial 31721
 repaired at owner's expense.
 No convertibles or Skyliners
 on this basis.
 -----------------------------
 A GREAT WAY TO SAY, `WE TRADE YOUR WAY'"
 ------------------------------------------------------------------
(See exhibits J-1-2-3-4 advertisements of September 17th and 18th inserted both in the Morning Advocate, and State Times morning and evening papers, respectively, Baton Rouge, Louisiana.)
It may be added that the 1955 models were expected to arrive within 60-90 days of this bargain sale of 1954 models.
Plaintiff and his wife testified that in response to these newspaper and radio advertisements they went to defendant's premises on September 21st, 1954. Johnson there purchased a 1954 Ford Sedan with certain accessories; he received an allowance of $974.05 for his old car and paid boot of $1,660 in cash. Johnson executed an act of sale for the 1954 Ford purchased by him, which we will discuss below.
In December, 1954, when the 1955 models were advertised, Johnson appeared at defendant's *78 premises and requested its compliance with the newspaper offer accepted by him. At this time or soon after, Johnson or his attorney was informed that defendant's newspaper advertisements were not intended as offers, but merely as invitations to come in and bargain; that by delivery of the 1954 automobile for the consideration expressed in the executed act of sale, defendant felt it had fully complied with all obligations whatsoever to Johnson.
Detailed discussion of the evidence is unnecessary, for we do not find the District Court's determination of the facts manifestly erroneous, supported as it is by sworn evidence and certain corroborating circumstances. For instance, defendant urges with considerable effect that Johnson's behavior in buying the 1954 Ford without any discussion whatsoever as to his right per the newspaper offer to exchange said model for a 1955 model, is not the usual and normal course of behavior.
But what we are here concerned with is not the usual course of behavior, but what transpired on this particular occasion.
Basically, when defendant urges that because usually and ordinarily a person would not behave as Johnson and his wife stated they did, in assuming without further discussion that they acquired the right to a 1955 model Ford upon their purchase of a 1954 Ford per the newspaper offer, defendant is attacking the credibility of the testimony of plaintiff and his wife, which issue the District Court with opportunity to see and hear personally all witnesses has resolved in favor of the plaintiff. Because plaintiff's conduct was improbable does not require a holding that it did not occur as testified under oath by himself and wife and believed by the District Court, for human beings do improbable things at times.[1]
We further do not find manifestly erroneous the District Court's determination that the pencilled notation "No '55 deal" was not on the contract of purchase of the 1954 Ford when executed by plaintiff on Sepetmber 21, 1954.[2]
Accepting the facts so found by the District Court, we believe its application of legal principles thereto was correct.
*79 In Louisiana and elsewhere a newspaper advertisement may constitute an offer, acceptance of which will consummate a contract and create an obligation in the offerer to perform according to terms of the published offer; Schreiner v. Weil Furniture Co., Inc., La.App., 68 So.2d 149; Youngblood v. Daily and Weekly Signal Tribune, 15 La.App. 379, 131 So. 604; Kodel Radio Corp. v. Shuler, 171 La. 469, 131 So. 462; Maginnis v. Union Oil Company, 47 La.Ann. 1489, 18 So. 459; Deslondes v. Wilson, 5 La. 397, 25 Am.Dec. 187; Corbin on Contracts, Vol. 1, pp. 60 et seq., Section 25.
In the Schreiner case very recently our brethren on the Orleans Court of Appeal observed: "It is possible to make offers to anyone, or to everyone, who may perform a specified act or make a specified promise. * * * There is no doubt that as a result of Mrs. Butscher's success in the contest the defendant must be held bound to his obligation. When plaintiff performed all of the requirements of the offer in accordance with the published terms, it created a valid and binding contract, under which she became entitled to the promised rewards. That there was a serious and mutual consideration is obvious." 68 So.2d 151.
"In order to constitute a proposal which may be converted into a contract by acceptance, the offer need not be addressed to a particular individual. A binding obligation may even originate in advertisements addressed to the general public," 12 Am.Jur. 527, Verbo Contracts, Section 28. Whether in any individual instance the newspaper advertisement is an offer, rather than an invitation to make an offer, depends on the legal intention of the parties and the surrounding circumstances; Annotation, 157 A.L.R. 744-751, 77 C.J.S., Verbo Sales, § 26, p. 634; 17 C.J.S., Verbo Contracts, § 46, p. 389; 12 Am.Jur. 526-527, Verbo Contracts, Section 28.
The advertisement denotes itself as an "offer", the wording to a reader denotes a bona fide bargain offer, and it was certain and definite enough to constitute a legal offer, Articles 1779, 1886, LSA-Civil Code.
If the automobile dealer had stated on September 17th to a specific customer: "If you buy a 1954 automobile before October 1st, I will let you trade it even (except for license and sales tax) for a 1955 model of exactly the same model, body style, and accessories when these 1955 models come out in 60-90 days, providing you return the 1954 model with only normal wear and tear"; undoubtedly the offeree's purchase of a 1954 model before October 1st would have been a binding acceptance (without any further discussion) of the dealer's offer, creating in the dealer an obligation to furnish a 1955 model when available according to the terms of the offer.
In light of the legal principles above summarized, this same offer communicated to the general public by a newspaper advertisement has the same legal effect when accepted according to its terms. In the absence of any limitation in the offer solely to cash purchases, we do not feel the situation differs because plaintiff purchased the 1954 Ford by trade-in with cash boot, instead of by cash only.
If appellant-dealer argues it did not actually intend this newspaper advertisement to constitute an offer, and therefore the advertisement did not do so, nevertheless "The rights of plaintiff and defendant are to be tested by the actual legal consequences flowing from a sale [contract] *80 made under the particular advertisement * * *. These consequences cannot be altered or checked because the agent of the company may have had an erroneous belief as to what the advertisement as written meant, or what it would legally convey. The advertisement controlled the rights and obligations of the parties", Maginnis v. Union Oil Company, 47 La.Ann. 1489 at pages 1495-1496, 18 So. 459, at page 461. In the Maginnis case, the purchaser's acceptance at public sale of the vendor's advertised offer to sell was held to require conveyance not only of the land and buildings, but also of the valuable machinery therein (immovable by destination), although it was the explicit intention of the vendor in preparing the advertisement not to include this machinery in the offer.
It must further be remembered that the words of the advertisement were of course chosen by defendant-dealer, and if any ambiguity exists as to their meaning, it must be resolved against their composer; LSA-Civil Code, Article 1957; Crummer v. Nuveen, 7 Cir., 147 F.2d 3, 157 A.L.R. 739, holding a newspaper advertisement to purchase bonds at par was an offer, rather than a mere proposal to negotiate, being complete and definite, and if ambiguous, construed against offerer.
Defendant urges that plaintiff was under some duty when he appeared on defendant's premises in response to the advertised offer to indicate that he was accepting same, since defendant indicates it would have offered less trade-in value for plaintiff's old car had it known that this was a "1954-1955" deal as advertised.[3] Assuming defendant would not have allowed as much trade-in if it had thought this was a "1954-1955" deal, if there was a burden on anyone, it would seem to be upon defendant to inform the plaintiff of any conditions or modifications of the apparently bona fide offer contained in the advertisement. "The party proposing shall be presumed to continue in the intention, which his proposal expressed, if, on receiving the unqualified assent of him to whom the proposition is made, he do not signify the change of his intention", Article 1801, LSA-Civil Code. See Loyd Mercantile Co. v. Long, 123 La. 777, 49 So. 521; Comment, (now Professor) Pascal, "Duration and Revocability of an Offer", 1 La.Law Review 182. "But if the doubt or obscurity [in the agreement] arise for the want of necessary explanation which one of the parties ought to have given, or from any other negligence or fault of his, the construction most favorable to the other party shall be adopted, whether he be obligor or obligee", Article 1958, LSA-C.C.
Thus we have here what is denoted both in the common law and in our civil code as a unilateral contract, or an obligation created by an offer accepted by an act: the offer or exchange of a promise for an act. The execution of the act (purchase of the 1954 Ford) by plaintiff in compliance with terms of defendant's published offer constituted plaintiff's acceptance of said offer, creating defendant's duty or obligation to furnish a 1955 Ford according to the terms of the published offer. See Comment, "The Unilateral Contract in Civil Law and in Louisiana" 16 Tulane Law Review 456.
Plaintiff's motive in purchasing the 1954 Ford was not only to receive it for the trade-in and boot given, but also to receive the right to exchange without substantial charge this 1954 Ford for a 1955 model when the latter became available. The cause or consideration for what plaintiff gave the dealer, included not only the 1954 Ford but also the right to exchange it for a 1955 Ford according to the terms of the published offer. See Civil Code Article 1896: "By the cause of the contract, in this section, is meant the consideration or motive for making it."; also (Professor) Smith,
*81 "A Refresher Course in Cause", 12 La. Law Review 2.
The executed sale which plaintiff signed when he purchased the 1954 Ford contained within a paragraph printed at the bottom of the page:
"The front and back of this order comprise the entire agreement pertaining to this purchase and no other agreement of any kind, verbal understanding or promise whatsoever, will be recognized."
Defendant urges with considerable force that applying the rule stated in United Engineering Co. v. Durbin, La.App. 1 Cir., 68 So.2d 614, the alleged independent collateral agreement based on acceptance of the newspaper offer was so closely related to the contract for purchase of a 1954 Ford as to be "naturally and normally" included in the written contract; therefore that parole proof should have been barred; or, that, in any event plaintiff waived his right to enforce this obligation as against defendant in view of the quoted clause.
However, as pointed out above, in the present case defendant was under a duty to notify plaintiff of any modification of the newspaper offer. The omission in this contract is construed against defendant. In a very similar situation, construing a similar clause, our Supreme Court held that acceptance of an advertised order completes the contract, which is not subject to further modification by either one of the parties without the consent of the other, Kodel Radio Corporation v. Shuler, 171 La. 468, 131 So. 462. Further, the terms of this proviso limit it as the "entire agreement pertaining to this purchase", which indeed was a complete contract within itself; but this purchase-sale contract, complete within itself, was nevertheless also the acceptance of an offer, creating another and a separate obligation.
Acceptance of an offer may of course be made by silent deed as well as by word; consent may be implied from actions under the circumstances, as well as by expressed words; but such acceptance of, founded on such consent to, an offer nevertheless creates a valid contract, and the offerer is bound by the obligation previously offered by him in exchange for the act which the obligee has performed in response to the offer, LSA-Civil Code Articles 1802, 1811, 1816; Shreveport Traction Company v. Mulhaupt, 122 La. 667, 48 So. 144; Lowy v. Builliard, La.App. 1 Cir., 17 So.2d 855; Netterville v. Police Jury, 6 La.App. 512 (1 Cir.).
The record reflects that plaintiff went to defendant's premises with the perhaps naive belief that the advertisement meant just what it said; that as subsequently blazoned by heavy black headlines in large advertisements, "TWO FOR ONE . . . Til September 30th AND THERE'S NO CATCH IN IT" (Exhibits J-5, J-6, J-7, and J-8); that everyone who bought a 1954 Ford during the 2-week period was ipso facto entitled to exchange it for a 1955 model when such were available, according to the dealer's offer. The published offer without qualification was that plaintiff's acceptance thereof by purchase of a 1954 model entitled him to receive a 1955 model in exchange, which implicitly no more needed discussion or formalized warranty in acceptance than does the assumption of one purchasing a new car that it will be painted rather than naked steel.
If defendant seriously argues that despite the plain wording of the advertised offer, defendant had absolutely no intention of making a bona fide offer but was merely intending to lure customers to defendant's sales lot, or that, if a bona fide offer, the routine signing of a form document by plaintiff amounted to a waiver of substantial property rights because of small print at the bottom, not called to his attention by defendant, it may be well to recall the expression of the Ohio Supreme Court in an almost identical factual situation as reported at Meyer v. Packard Cleveland Motor Co., 106 Ohio St. 328, 140 N.E. 118, at page 121, 28 A.L.R. 986, at page 991:

*82 "There is entirely too much disregard of law and truth in the business, social, and political world of to-day. * * * It is time to hold men to their primary engagements to tell the truth and observe the law of common honesty and fair dealing."
Answer to Appeal.
The District Court judgment orders in specific performance of the contract, the defendant to "deliver to the said plaintiff a 1955 Ford two-door Sedan Customline V-8 with radio, heater, overdrive and windshield washers, in exchange for plaintiff's 1954 Ford, all at defendant's cost, the said plaintiff to pay the license fees and sales tax due thereupon." In answer to the appeal, plaintiff points out that this was adequate relief in May of 1955 when the judgment was rendered; but due to the appellate delays the 1955 Ford model has now been superseded by a 1956 model. Plaintiff requests that judgment be amended to command defendant to deliver a 1956 Ford of the same style, accessories, etc., instead of a 1955 Ford.
There is no evidence in the record that a 1956 Ford is of the same value as a 1955 Ford; there is no evidence that the additional depreciation on plaintiff's 1954 Ford does not exceed the legal rate of five per cent per annum interest to which increase in award alone plaintiff is entitled by reason of the appellate delays (in the absence of frivolous appeal); we cannot amend the judgment as requested.
Initially, the plaintiff had alternatively demanded monied damages for the difference in value between his 1954 Ford and the 1955 Ford model to which plaintiff is entitled under the contract. Through defendant's sales manager, the record indicates that the value of a 1955 Ford of the same style and accessories, etc., as plaintiff-appellee's 1954 Ford is $2,622, while the value at date of trial of plaintiff's 1954 Ford, which it was necessary for him to exchange for a 1955 Ford, was between $1,400-$1,475. Adopting the lower figure, it would appear that plaintiff would be entitled to a judgment on his alternative demand in the sum of $1,222 plus legal interest from date of judicial demand until paid, and plus costs. (With this sum plus the 1954 Ford, at date of trial plaintiff could have obtained a 1955 model according to the terms of defendant's obligation.)
However, in the answer to the appeal plaintiff-appellee did not see fit to request this alternative relief, although he did pray for "all general and equitable relief".
We are cited to no authority that gives us the power to amend a decree in favor of the appellee in a manner other than as prayed for in an answer to the appeal, even though such answer contains a further prayer for "general and equitable relief". On the other hand, the answer to the appeal was timely filed and does indicate that plaintiff is now entitled to further relief than allowed by the original decree. Under Code of Practice Article 906, we are remanding this case in order that the judgment may be amended in accordance with the views expressed herein. In all other respects, the judgment appealed from is affirmed. Defendant-appellant is to pay all costs of these proceedings and of this appeal.
Affirmed: but remanded for amendment of decree.
LOTTINGER, Judge (dissents).
Petitioner, Leland H. Johnson, filed this suit for specific performance of an alleged contract against the defendant, Capital City Ford Company. The Lower Court awarded judgment for petitioner as prayed for. Defendant takes this appeal, which was answered by the petitioner.
The facts show that during the period of September 17, 1954, through September 30, 1954, the defendant, Capital City Ford Company, Inc., conducted an extensive advertising campaign through newspapers and *83 radio for the purpose of selling its stock of 1954 model Ford automobiles. At intervals during this period, advertisements containing the following language were printed in the Baton Rouge State Times and Morning Advocate:
 "TWO FOR ONE
 . . . . . . . . . . . . . . . . . For Two Weeks
 BUY A NEW '54 FORD NOW
 TRADE EVEN FOR A '55 FORD
 Don't WaitBuy a 1954 Ford now, when the
 1955 models come out we'll trade even for your
 '54. You pay only sales tax and license fee.
 Your '55 Ford will be the same model, same body
 style, accessory group, etc. A sure thing for
 youa gamble for us, but we'll take it. Hurry,
 though, this offer good only for the remainder
 of September.
The 1954 car must be returned
with only normal
wear and tear. Physical
damage, such as dented fenders, CAPITAL CITY FORD
torn upholstery, etc. CO., INC.
must be charged to owner or 1849 North St. Dial 3-1721
repaired at owner's expense.
No convertibles or Skyliners
on this basis.
 A GREAT WAY TO SAY, `WE TRADE YOUR WAY'"
Although variations of the above advertisement appeared later in the campaign, the above ad was the only one which was printed prior to September 21, 1954, the date on which petitioner purchased a 1954 Ford from the defendant.
The evidence discloses that petitioner and his wife saw the advertisement, and went to Capital City Ford Co. and purchased a new 1954 Ford. The salesman who handled the transaction was E. J. Daigle. The evidence shows that the transaction took approximately one hour of time, during which time Mr. Daigle filled out a purchase order, which has been filed into evidence, which was signed by petitioner and approved by Mr. W. W. Holmes, Sr., the sales manager of the defendant company. As partial payment of the new car, the petitioner was allowed a trade in of $974.05 on his old car. At the bottom of the purchase order, and above petitioner's signature is printed the following:
"I hereby agree to purchase from you under the terms and conditions specified, the vehicle described above. It is agreed, however, that neither you nor the Manufacturer will be liable for failure to effect delivery. Manufacturer's warranty is shown on back of this order. It is agreed that there are no other warranties, either expressed or implied covering said car. This order is not binding on dealer until accepted by dealer in writing. I have read the matter printed on the back hereof and agree to it as a part of this order the same as if it were printed above my signature. The front and back of this order comprise the entire agreement pertaining to this purchase and no other agreement of any kind, verbal understanding or promise whatsoever, will be recognized. Receipt of a copy of this order is hereby acknowledged." (Italics mine.)
*84 Also on the face of the contract is found a penciled notation: "No '55 deal." This notation is claimed by defendant to have been on the contract at the time petitioner signed same, however, petitioner and his wife deny this.
A few weeks later, petitioner and his wife went to defendant's salesroom to exchange their 1954 Ford for a 1955 model, as per the advertisements. They were refused the exchange, and they now bring suit for specific performance. A suspensive appeal was taken from the judgment for petitioner below, and on appeal the petitioner's claim damages in lieu of specific performance.
Petitioner's contention is that the advertisement as quoted above constituted an offer which was accepted by his purchase of a 1954 model Ford. Petitioner admits that at the time of his said purchase, no conversation whatever was held as regards the exchange of the 1954 model for a 1955 model. He denies that any specific agreement was necessary, contending that by his acceptance of the alleged offer, i. e. the buying of the 1954 Ford, the obligation of the exchange became binding on defendant.
Defendant, on the other hand, contends that the sale to petitioner was an outright sale contract, and contained no deal for a 1955 Ford. Had the 1955 Ford deal been made a part of the contract, the petitioner would have received a substantially lower trade-in on his old car. Defendant contends that the advertisement was merely an invitation to come in and discuss a deal, and was not an offer, as is contended by petitioner.
Defendant's counsel objected to the introduction of a large part of the evidence which tended to alter, add to, or contradict the terms of the written contract which was signed by petitioner and accepted by the defendant company. Such objections included the filing into evidence of the advertisements relative to the exchange.
Article 2276 of the LSA-Civil Code states as follows:
"Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since."
In interpretation of this article, the Louisiana courts have held that parol evidence is inadmissible to vary or add to the terms of a written contract, and that such evidence cannot be introduced to explain, contradict or subtract from the clear and unambiguous language of the agreement, unless fraud or error is alleged. Smith v. Bell, 224 La. 1, 68 So.2d 737; Brenard Manufacturing Company v. M. Levy, Inc., 161 La. 496, 109 So. 43; Pfeiffer v. Nienaber, 143 La. 601, 78 So. 977; United Engineering Company of Louisiana v. Durbin, La.App., 68 So.2d 614; and Brandin Slate Company v. Fornea, La.App., 183 So. 572.
No fraud or error was alleged by the petitioner, and so the above rule of law is applicable in the instant case. Particularly is such true when considering the written agreement which provides that "The front and back of this order comprise the entire agreement pertaining to this purchase and no other agreement of any kind, verbal understanding or promise whatsoever, will be recognized." The parol evidence rule in Louisiana, as set forth by the Louisiana Supreme Court in Rosenthal v. Gauthier, 224 La. 341, 69 So.2d 367, at page 369, is as follows:
"`When persons commit their agreements to writing, their intentions and purposes cannot be sought outside the four corners of the written instrument. Where the terms of the agreement, however, are so ambiguous as not to be susceptible of intelligent construction, parol evidence may be admitted to make clear that which is obscure; but it is certainly in direct contravention of article 2276, Civ.Code, to admit parol, not to explain, but to add to and contradict, a written agreement.' Bank of Napoleonville v. Knobloch & Rainold, 144 La. 100, 80 So. 214, 216."
*85 Where fraud or error is not alleged, the only exceptions to the parol evidence rule are (a) the admissibility of parol evidence to explain ambiguous language in the written contract, and (b) admissibility of parol evidence pertaining to a collateral agreement which does not vary or alter the terms of the written agreement. Brandin Slate Company v. Fornea, supra. As petitioner does not allege fraud or error, and it is apparent that the terms of the written contract entered into are not ambiguous, let us consider the latter exceptionthe admissibility of parol evidence pertaining to a collateral agreement which does not vary or alter the terms of the written agreement. The test of admissibility as applied in Louisiana decisions in this regard is as follows:
"The test of admissibility in such cases is whether the evidence offered tends to alter, vary, or contradict the written contract, or only to prove an independent, collateral fact about which the written contract was silent. In the former case the testimony is inadmissible; in the latter it is competent and proper." Davies v. William W. Bierce, 144 La. 663, 38 So. 488, 493.
It is clear, from the above decision, that extrinsic evidence cannot be introduced to prove a collateral agreement which adds to or varies the terms of the written contract. Now certainly the admission of evidence of a collateral agreement would tend to add to and vary the contract under consideration, as the said contract specifically declares that it contained the entire agreement and that no other agreement of any kind, pertaining to the purchase, would be recognized. I, therefore, feel that, under the clear law of this state, the admission of the extrinsic evidence in this case was improper.
To take the matter a step further, and to determine further whether certain evidence tends to vary, contradict or add to a written contract, we quote from United Engineering Company of Louisiana v. Durbin, supra [68 So.2d 615]:
"`That parol may be introduced to prove an independent collateral agreement is a well recognized exception to the general rule. The question presented in the principal case is whether the bond between the two alleged agreements is sufficiently close to prevent proof of the oral agreement. "The test to determine whether the alleged parol agreement comes within the field embraced by the written one is to compare the two and determine `whether parties, situated as were the ones to the contract, would naturally and normally include the one in the other if it were made.'"'"

Now certainly if the petitioner intended to make the trade of a 1955 Ford a part of this contract, he would have insisted that such provision be made a part of his contract. This he failed to do, in fact no mention whatsoever was made of the 1955 deal until several weeks after the contract was signed and approved.
From the foregoing, it is my conclusion that the extrinsic evidence should not have been permitted, and that petitioner's suit should have been dismissed.
Even were I to consider, merely for purposes of argument, the prohibited evidence, I still feel that petitioner's case must fail as, under the greater weight of authority, the newspaper advertisement was not an offer but was merely an invitation to enter into negotiations for an agreement. The rule on this particular point is stated in Volume 1, Corbin on Contracts, Section 25, page 60, as follows:
"It is quite possible to make a definite and operative offer to buy or to sell goods by advertisement, in a newspaper, by a handbill, or on a placard in a store window. It is not customary to do this, however; and the presumption is the other way. Neither the advertiser nor the reader of his notice understands that the latter is employed to close the deal without further expression by the former. Such advertisements are understood to be mere requests to consider and examine and *86 negotiate; and no one can reasonably regard them otherwise, unless the circumstances are exceptional and the words used are very plain and clear.
"On the other hand it is very common, where one desires to excite many people to action, to offer a reward for such action by general publication in some form. Some offers must be reasonably interpreted, according to their terms and the surrounding circumstances; but action in accordance with such interpretation will close a contract."
It is noted that Mr. Corbin, as well as the other writers on the subject, draw a distinction between advertisements to sell merchandise and advertisements for a reward. Advertisements announcing the terms of a prize contest fall into the same category as announcements of rewards because the characteristics of both require that they be addressed to the general public by advertising. As offers of rewards and prizes must of necessity be made by advertisements, it is well settled that they can be withdrawn only in the same manner. Advertisements relating to the sale of merchandise do not have the same characteristics and, consequently, are governed by different legal rules.
In 77 C.J.S., Sales, § 25, p. 634, the rule is stated in similar language as follows:
"Business advertisements published in newspapers * * * stating that the advertiser has a certain quantity or quality of goods which he wants to dispose of at certain prices and on certain terms, are not offers which become contracts as soon as any person to whose notice they may come signifies his acceptance by notifying the other that he will take a certain quantity of them, but are ordinarily construed merely as an invitation for an offer for sale on the terms stated, which offer when received may be accepted or rejected, and which, therefore, does not become a contract of sale until accepted by the seller; and until a contract has been so made the proposer may modify or revoke such prices or terms."
In 17 C.J.S., Contracts, § 46, p. 389, I find the following language:

"Proposals to deal. * * * Whether or not a business circular, a corporate prospectus, a published price list, or other advertisement of like nature is an offer which will, on acceptance form a contract, or is merely an invitation to make an offer, depends on the language used; but generally a newspaper advertisement or circular couched in general language and proper to be sent to all persons interested in a particular trade or business, or a prospectus of a general and descriptive nature, will be construed as an invitation to make an offer.

"Prize contests, etc. An offer of a prize may mature into a binding contract in favor of a successful contestant who has complied with the terms of the offer. However, a response to a proposal for exhibitors to show their wares at a public exhibition has been held not to make an agreement."
In 12 American Jurisprudence pp. 526-527, Contracts, Section 28, I find:
"* * * A general offer must be distinguished from a general invitation to make an offer. Performance of the conditions of the former makes a legally binding contract, whereas compliance with the requirements of the latter involves nothing more than an offer, which may or may not be accepted by the party who issued the invitation therefor. A mere quotation of price must be distinguished from an offer. From the nature of the subject, the question whether certain acts or conduct constitute a definite proposal upon which a binding contract may be predicated without further action on the part of the person from whom it proceeds or a mere preliminary step which is not susceptible, without further action by such party, of being converted *87 into a binding contract depends upon the nature of the particular acts or conduct in question and the circumstances attending the transaction. It is impossible to formulate a general principle or criterion for its determination. Accordingly, whether a communication naming a price is a quotation or an offer depends upon the intention of the owner as it is manifested by the facts and circumstances of each particular case."
Of course throughout the country there are cases pro and con on the subject. Some hold newspaper advertisements by their peculiar wording to constitute offers. Others hold the advertisements to be mere invitations. In Louisiana we have certain cases holding advertisements to be binding offers, however, these cases deal with contests for prizes and with auction sales. In Schreiner v. Weil Furniture Co., La. App., 68 So.2d 149, the Court held the advertisement to be a binding offer, however, this case dealt with an advertisement announcing the rules and prizes to be awarded in a contest. A similar holding was reached in Youngblood v. Daily and Weekly Signal Tribune, 15 La.App. 379, 131 So. 604, which dealt with a newspaper subscription contest. In Maginnis v. Union Oil Co., 47 La.Ann. 1489, 18 So. 459, the offer was to sell at auction to the last and highest bidder, under terms and conditions set forth in the advertisement. These particular situations are covered by their own particular rules and statutes, and are not similar to the particular situation which is before us. Actually the question presented in the instant case is res novo in Louisiana.
As stated, the greater weight of authority in this country is to the effect that a newspaper advertisement of the nature presented in this case is not an offer, but merely an invitation for the customer to make an offer.
For the reasons hereinabove assigned, I respectfully dissent from the majority.
NOTES
[1] Although E. J. Daigle, the salesman involved testified that he must have discussed the lack of application of the advertised offer, because he invariably did so, plaintiff and his wife testified unequivocally and were believed by the District Court, that no discussion whatsoever occurred concerning the right to acquire a 1955 model automobile when plaintiff purchased his 1954 Ford. And it is to be noted that by implication defendant's president admitted that the salesmen did not invariably discuss with customers whether they were interested in the bargain deal expressed by the advertisements, see testimony of J. Theron Brown, President of Defendant at Tr-16:

"Q. Well, now, was it the policy of you and your employees or your salesmen, or anyone connection with these deals, to discuss that with these people and inform them when they bought a 1954 Ford that they might not be entitled to a 1955 Ford?
"A. If they came in and referred to the ad and for the purpose of discussing that particular proposition offered in the paper, yes. But that, as I understand it, was not mentioned in this particular case by the purchaser." (Italics ours.)
[2] To the naked eye this notation appears to be by a different hand and different pencil than the signature of the salesman who allegedly made this notation; on a photostat of this sale, all other pencilled notations allegedly made at the same time are legible, but this notation is almost invisible and cannot be read. Plaintiff and his wife testify positively that such notation was not on the contract when executed, nor when they returned approximately 2 months later, to receive their 1955 model; and while defendant's salesman testified that it must have been on there because he would not have made such notation after the deal, another representative of defendant whom plaintiff and his wife testified on the latter occasion had examined the contract with them and found no such notation, was unable to remember either to confirm or to deny this visit of Johnson and his wife or whether or not he saw the contract on that occasion. Some further corroborative force to plaintiff's story is the testimony that such transactions were always stamped with a rubber stamp when a "No 1955" deal was made, and in this instance plaintiff's contract was not so stamped. Of course, defendants testify with allegedly equal effect that these contracts were always likewise noted when a 1955 exchange deal was consummated. But it is to be remembered that contracts, including omissions, are to be construed against him who prepares them, in this case defendant dealer.
[3] Plaintiff's answer is that he would not have bought the 1954 Ford car from defendant, even at that trade-in value given him by defendant, unless he thought he was to receive the 1955 car in exchange therefor without extra cost (except for sales tax and license) when such later model was available.